[NOTE.—In the former opinion in this case, 57 *Md.*, 502, in the first line after the word "over," this sentence, inadvertently omitted by the writer, should be inserted: "So also was the other leasehold property sold by himself."—REPORTER.]

---

MARY ANN ALLENDER *vs.* JOHN W. KEPLINGER. ARCHIBALD M. TRUST, and others *vs.* JOHN W. KEPLINGER.

*Construction of Will—Gift to a Class—Distribution per capita.*

W. E. died in the year 1828, leaving a will, by which he gave to his two daughters, Mary and Elizabeth, life estates in all his property,

real, personal and mixed, with a remainder over in favor of Mary after the death of Elizabeth. The will then proceeded as follows: "Item. Upon the decease of both of my daughters, Mary and Elizabeth, it is my will and desire that the property hereby bequeathed to them for their use and benefit, shall be equally divided among the lawful issue of my son John, lately deceased, and the lawful issue of my two daughters, Mary and Elizabeth, aforesaid, or the survivors of their issue; but in case the property hereby bequeathed cannot be equally divided, then and in that case I hereby direct my executors hereafter named, to sell the same and distribute the proceeds thereof, share and share alike, among the lawful issue of my above named son and daughters or the survivors of them, the said issue." Both of the daughters died. Mary left surviving her three children and four grand-children, the children of three deceased daughters. Elizabeth left one daughter; and John's descendants who were living at the decease of the last surviving daughter of the testator, were five grand-children, the children of a deceased daughter. HELD:

That the objects of the testator's bounty, after the death of his two daughters, were not divided into classes with a share of the estate to each class; but they were all comprehended in one class, and were to receive separately equal interests with each other.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*E. J. D. Cross,* for the appellant, Mary Ann Allender.

*Fred. J. Brown,* for the other appellants.

*John H. Handy,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Wolfgang Etchberger executed his last will and testament in such manner as to pass real and personal estate.

He. died in the year 1828, and his will was duly admitted to probate. He gave to his two daughters, Mary Keplinger and Elizabeth Etchberger, life estates in all his property, real, personal and mixed, with a remainder over in favor of Mary, after the death of Elizabeth. His will then proceeded as follows:

" *Item.* Upon the decease of both of my daughters, Mary and Elizabeth, it is my will and desire, that the property hereby bequeathed to them for their use and benefit, shall be equally divided among the lawful issue of my son, John Etchberger, lately deceased, and the lawful issue of my two daughters, Mary and Elizabeth, aforesaid, or the survivors of their issue, but in case the property hereby bequeathed, cannot be equally divided, then, and in that case, I hereby direct my executors, ·hereafter named, to sell the same, and distribute the proceeds thereof, share and share alike, among the lawful issue of my above named son and daughters, or the survivors of them, the said issue.

"*Item.* I hereby nominate, constitute and appoint James Clark and Labon Welch, of the City of Baltimore, trustees, to take charge of the share or portion hereby bequeathed to my daughter Elizabeth, for her use, and to manage the same, and act for her in that capacity, on all occasions, as circumstances may require, during her natural life, giving her the full and sole use and benefit thereof, and in case the above named James Clark and Labon Welch should remove away or die, then and in that case, it is my will and desire, that they, the said James Clark and Labon Welch, shall appoint two discreet persons to act as trustees for my heirs aforesaid."

Both of the daughters are dead. Mary has left surviving her three children and four grand-children, who are the children of three deceased daughters. Elizabeth has left one daughter, and John's descendants, who were living at the decease of the last surviving daughter of the testator, are five grand-children, the children of a

deceased daughter. The trustees and executors are dead; and John W. Keplinger, son of the testator's daughter Mary, has been appointed administrator of the estate *de bonis non, cum testamento annexo.*

We do not deem it necessary for the present purpose to state the facts more in detail. They are stated more fully in the report of *Keplinger vs. Maccubbin,* 58 *Md.,* 203.

John W. Keplinger, administrator as aforesaid, and in his individual capacity as legatee, filed a bill in equity in the Circuit Court of Baltimore City, in which he alleged that the property devised by the will could not be equally divided among the parties entitled to it; and that it was necessary that the same should be sold for the purpose of division and distribution; and he prayed that the administration of the estate might be made under the direction and protection of the Court; and that he might be appointed to execute the directions of Etchberger's will as to the sale of the property. Certain persons are made defendants who are alleged to be the only issue of the children of the testator, who were living at the time of the death of his last surviving daughter.

It appears that some necessary parties were omitted from the bill of complaint. But a table of Etchberger's descendants is inserted in the record, which, by agreement of counsel, is admitted to be correct. All of the omitted parties were afterwards made defendants with the exception of one, who had disposed of his interest to Mr. A. R. White. Mr. White was made a defendant in his stead. The answers allege a number of reasons why the complainant should not be appointed by the Court a trustee to execute the trusts of the will, and a large amount of testimony was taken in the cause. The opinion which we have formed makes it unnecessary to discuss these reasons or the testimony offered in support of them. It was definitely decided in the case in 58 *Md.,* already referred to, that the complainant, by virtue of his appointment as administrator,

was vested with the power of sale, and that he could have exercised it under the direction and supervision of the Orphans' Court. It was also decided that he had the right to ask the direction and protection of a Court of equity in administering the estate, and executing the power of sale. The Court, in its opinion, says: "We are clearly of opinion that the sale can now be made in no other way and by no other party, unless the complainant (Keplinger) may choose to waive his right and ask for the appointment of another party as trustee to sell." We consider this question as no longer open for controversy.

The Circuit Court decided that the complainant should sell the real estate in his capacity of administrator *d. b. n. c. t. a.;* and that the proceeds should be divided equally among Etchberger's descendants already mentioned, putting Mr. White, however, in the place of the one whose rights he had acquired. All of the defendants appealed except one of the daughters of the testator's daughter Mary, and two children of a deceased daughter of said Mary. We were informed, however, at the argument that none of the appellants objected to the distribution decreed by the Circuit Court, except Mary Ann Allender, the only daughter of the testator's daughter, Elizabeth. Her counsel contends that the distribution ought to be *per stirpes;* and that consequently she is entitled to one-third part of the proceeds.

We observe that the testator in one clause of his will had given his whole property to his daughters for life in equal portions.. But after their death he changes the mode of dividing it. He does not say that each daughter's share shall belong to her issue. Nor does he divide the property into three parts, and say that one part shall go to his son's issue, and one part to one daughter's issue, and one part to the other daughter's issue. There is no indication whatever that he wished an equal portion of his property to go to each set of descendants from his children.

On the contrary, he declares that it shall be divided equally among the issue of his children, or the survivors of the issue, considering the whole number of them as constituting a single class. And when he reflects that possibly the property might not be susceptible of equal division, and provides for a sale of it, he makes his meaning still more clear, by saying that the proceeds of sale shall be divided, share and share alike, among the issue of his son and daughters, or the survivors of them, the said issue. The issue of all his children are spoken of collectively, and are regarded as composing one undivided body of persons, and the property is to be divided equally among the individuals who make up this body. This being the intention of the testator, as expressed by the words of his will, we do not know that we can derive much aid from the consideration of the words of other wills, which have been construed by the Courts. The intention of the testator furnishes the rule of construction, when it can be gathered from the language used, unless it contravenes some rule of law. Many cases may be found where the Courts have construed particular words, and attributed to them a special signification; and it is sometimes argued that in this way a rule of construction has been established for other wills, where the same words occur. Unless words have acquired a fixed, definite, legal meaning, their construction is always liable to be modified by the context; and their interpretation in one will cannot be adopted in the case of another, where it would defeat the intention of the testator. But on this subject, as on all others, the opinions of learned Courts are entitled to very great respect; and by considering the mode in which a testator's meaning has been ascertained, we may receive some useful suggestions for dealing with a will of a very different character. While we may not accept a given decision as an artificial rule to control our judgments in the ascertainment of a testator's intention, we may nevertheless find

it very useful in illustrating the reasons on which we have founded our own conclusions.

In *Brittain and Wife vs. Carson, et al.*, 46 *Md.*, 186, this Court construed a clause in a will, which consisted of the following words: "It is my will that the rest, residue and remainder of my said estate shall be equally divided between my said daughter, Amelia J. Brittain and the children of Virginia Carson." Mrs. Carson was a deceased daughter of the testator, who had left two children surviving her. It was held that the distribution was to be made *per capita;* Mrs. Brittain getting one-third, and each of the Carson children getting a third. The Court in their opinion refer to a number of cases, where the same construction prevailed. We will notice some of them. In *Maddox vs. The State*, 4 *Har. & Johns.*, 539, the testator directed the residue of his estate "to be equally divided between his brother Justinian, and his brother George's children." The Court held that they took as tenants in common, and distribution was to be made *per capita* and not *per stirpes.* In *Abrey vs. Newman*, 16 *Beavan*, 431, a testator had used in his will the following words: "All the above named property to be equally divided between Benjamin James and his wife, Ann James, Charles Abrey and his wife, for the period of their natural lives, after which, to be equally divided between their children (that is to say) the children of Benjamin James and Charles Abrey abovementioned." James and his wife were both dead, leaving children; and the wife of Abrey was also dead, leaving children by her husband; but he survived. It was decided that upon the death of James and his wife their share was divisible *per capita* amongst the children of James and of Abrey. In *Tyndale vs. Wilkinson*, 23 *Beavan*, 74, the case was as follows: A testator had a son and two daughters living; another daughter was dead, leaving five daughters surviving her. He gave five thousand pounds to one daughter for life, with remainder to her

children; he gave five thousand pounds to the five daughters of his deceased daughter; and five thousand pounds to his other daughter for life, with remainder to her children. He then gave the residue of his estate equally amongst his son, his two daughters, and the five daughters of his deceased daughter, to be settled upon them and their issue. The Court decided that the residue should be divided into eight parts; the five daughters of the deceased daughter each took a part, and the son and two daughters each took a part.

These decisions proceeded on the ground that the objects of the testator's bounty were not divided into classes, with a share of the estate to each class; but that they were all comprehended in one class, and were to receive separately equal interests with each other.

We have reached a similar conclusion in the present case, and shall affirm the decree below with costs.

*Decree affirmed with costs,*
*and cause remanded.*

(Decided 27th March, 1884.)