CLINTONIA G. THOMAS *vs.* THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, and others. WILLIAM R. BREWER, Guardian ad litem of VICTORIA L. LEVERING, and others, Infants *vs.* THE SAME. CLINTONIA G. THOMAS, and her husband PHILIP FRANK THOMAS *vs.* LOUIS R. LEVERING, PAULINE M. LEVERING, and others.

*Construction of Will—Nature of Estate—When Children take to the Exclusion of Grandchildren—Guardian ad litem—Right of Appeal—Sec. 24 of Art. 5 of the Code— Estoppel.*

A testator devised and bequeathed the rest and residue of his estate to his executors, and the survivor of them, in trust to apply the income thereof to the sole and separate use of his three daughters for life, share and share alike, and at the death of his said daughters, or any of them, her share to pass to her issue, children, or descendants forever; but in case any of his said daughters should die without issue living at her death, her share was to pass to her surviving sisters and their descendants; "it being my express will that none of my daughters shall be entitled to more than a life estate to their sole and separate use." By a codicil, the testator provided as follows: "Having subsequently to the execution of my will, given property to my two daughters, V. and E., it is my will and intention that they be charged with the same as part of their share of my property to place them on a footing with my daughter C. to whom I give property valued at $35,000, and that after they have all received the amount of $35,000, then to share alike in all the balance of my property." In another codicil he said: "As all my property is to go to my three daughters, I revoke the appointment of my nephews, and appoint my three sons-in-law as my executors." HELD:

That the codicils did not revoke the will, but that each daughter took an equitable life estate in one-third of the testator's property, each being charged with the amount advanced to her, as part of her share.

Thomas *vs.* Levering.

Where a testator devises his property to his daughters for life, and at the death of said daughters, or any of them, her share to pass to her "issue, children, or descendants," the children of a deceased daughter take an absolute estate in her share, to the exclusion of her grandchildren.

In contemplation of section 24 of Article 5 of the Code, regulating appeals from Courts of equity, a guardian *ad litem* may be a party to the suit, and as such has the right of appeal on behalf of the infants, for the purpose of protecting or advancing their interests.

An appellant from a decree generally—and not from any particular part of it—which not only construed the will of her father, in the proceedings mentioned, but declared and named the persons who should take under such construction, thereby distributing the estate, will not be allowed to say that her appeal did not raise the question of distribution, she in her answer to the bill of complaint having prayed that the will might be interpreted, and that the Court would determine the distribution proper to be made thereunder.

APPEALS from the Circuit Court of Baltimore City.

The decree from which the first and second appeals were taken, declared that if Mrs. Thomas should die without issue living at the time of her death, her share should pass to, and be vested in, the children of Mrs. Levering and Mrs. Thom. The case is stated in the opinion of this Court.

The causes were argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*J. Wilson Leakin,* and *S. Teackle Wallis,* for Mrs. Clintonia G. Thomas, Pembroke Lea Thom and W. H. De Courcy W. Thom.

*Richard M. Venable,* for William R. Brewer, Guardian *ad litem.*

*Wm. Cabell Bruce,* and *William A. Fisher,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The principal questions presented for consideration in two of the appeals before us are, first, whether the will of the late William H. D. C. Wright was revoked by the codicils thereto; and if not, what is the true construction of the will and codicils standing together?

The third appeal, which by agreement, was heard with the two just mentioned presents the single question as to the validity of the decree of the Circuit Court of Baltimore City of the 19th of July, 1865, passed in a cause in which Clintonia G. May and others were plaintiffs and Samuel S. Levering and others were defendants. The construction of the will in question, adopted and declared by this decree establishes the trusts which Mrs. May, now Mrs. Thomas, contends are entirely destroyed and revoked by the codicils, which, according to her construction of them, give to her an absolute instead of an equitable life estate.

The view we have taken of the questions presented by the other appeals renders it unnecessary to determine the controversy as to the effect of the decree of 19th of July, 1865; for conceding, without deciding, that Mrs. Thomas is not concluded thereby, we have arrived at the conclusion that the codicils, when rightly construed, in no manner affect the validity of the trusts set forth in the will.

We will therefore briefly state the ground of this conclusion.

The will of the late Mr. Wright, or that part of it which gives rise to the controversy is in the following words: " I will and bequeath all the rest and residue of my estate, wherever situated, and whatsoever it may consist of, real, personal or mixed, to my executors here-

inafter named, and the survivor of them, upon the following trusts, that is to say, to apply the income thereof to the sole and separate use of my daughters during their natural lives, share and share alike, and at the death of my said daughters, or any of them, her share to pass to her issue, children or descendants forever, but in case any of my said daughters shall die without issue living at her death, then her share shall pass to her surviving sisters and their descendants; it being my express will that none of my daughters shall be entitled to more than a life estate to their sole and separate use, but the whole of the shares thus bequeathed shall ultimately vest in the descendants of my daughters, or any of them who may have descendants; in which case the distribution shall be made among such descendants *per capita* and not *per stirpes*, and the descendants of my daughters aforesaid, are to be considered as purchasers, and as such entitled to the principal or property itself, from the time their rights respectively vest."

And the two codicils in question are as follows:

Codicil of 1858: "Having subsequently to the execution of my will, on the 22d day of May, 1854, given property to my two daughters, Victoria and Ella, it is my will and intention that they be charged with the same as part of their share of my property to place them on a footing with my daughter, Clintonia, to whom I give property valued at thirty-five thousand dollars, and that after they have all received the amount of thirty-five thousand dollars, then to share alike in all the balance of my property."

Codicil of 1860: "In my foregoing will I have appointed my two nephews, John S. Wright and Robert C. Wright, my executors, but as they are likely to be absent from this country, and as all my property is to go to my three daughters, Clintonia G. May, Victoria L. Levering and Ella L. Thom, I hereby revoke the ap-

pointment of J. S. Wright and R. C. Wright and ap-
point as my executors my three sons-in-law, Wm. May,
Saml. T. Levering and J. Pembroke Thom, and it is my
wish that they shall not be required to give any bond."

As we have said, the appellant Mrs. Thomas contends
that these two codicils revoke the will, so far as the
trusts thereby created are concerned, and operate to give
to the daughters of the testator absolute legal estates,
instead of equitable life estates, as provided by the will.

We look in vain to find any language in them which
bears any semblance to an express revocation, and, ac-
cording to the well settled rules of construction in a case
like this, the will and the codicils must, if possible,
stand together, and the latter should be so construed as
to be in harmony with the former, unless such a con-
struction is impossible. In the case of *Lee vs. Pindle
and Wife,* et al., 12 *G. & J.,* 305, this Court thus lays
down the rule:

"The will and codicil are to be construed together as
one instrument, and are to be reconciled as far as
practicable; but if there be any conflict or repugnancy
between them, the codicils, as the last indication of the
testator's mind must operate in preference to the will."

And the same rule is laid down in the case of the
*Johns Hopkins University,* et al. *vs. Pinckney,* 55 *Md.,*
380, and supported by the citation of numerous author-
ities.

It has been often remarked that apart from these gen-
eral rules, judicial decisions afford but little assistance
in arriving at the intention of the testator, which, after
all, if it can be ascertained in any proper manner, will
determine the rights of the parties claiming under the
will.

What, then, is the intention of the testator as mani-
fested by the provisions of his will and the codicils which
we have quoted?

It appears from the face of the will itself that before its execution the testator, by deed, conveyed to his daughter, Mrs. Thomas, then Mrs. May, a valuable farm known as "Blakeford," and that she was to be charged with thirty-five thousand dollars, the value of said farm before she should be entitled to his estate. It also appears from the codicil first above quoted that, subsequent to the execution of the will, he had given to each of his other two daughters certain property, and he therefore declares in said codicil that it is his will and intention that they shall be charged with the same as part of their share of his property, "to place them on a footing" with Mrs. Thomas, and he concludes the codicil by saying "that, after they have all received the amount of thirty-five thousand dollars, then to share alike in all the balance of my property." The object and intention of the testator in this codicil seems to us to be evident, namely, to preserve that absolute equality in the shares of his estate which his daughters were to take under the will. It was urged that the words "then to share alike in all my property," indicated an intention to give an absolute estate. But it cannot be supposed that the testator intended by this doubtful and uncertain language to revoke the most important part of his will. And while such a construction would be contrary to the obvious intention of the testator as expressed in the will, it would also be in violation of the well established rule to which we have referred. In 55 *Md.*, 383, we said that, when "a bequest is made in clear and unambiguous terms, it would be against every sound principle of construction to permit such a gift to be revoked by doubtful expressions in a codicil."

By the terms of the will, each daughter was to have an equitable life interest in one-third of the testator's estate. And the codicil did nothing but preserve that equality. The nature and duration of the estate are

carefully defined in the will, while the codicil, by show-ing how much is to be charged against each daughter, establishes beyond dispute the exact amount of each share.

But the appellant relies also upon the codicil of the 22nd of December, 1860, to maintain her position.

Much that has already been said in regard to the posi-tion of the appellant, based upon the language of the other codicil, will apply with equal force to her conten-tion in regard to the one we are now considering.

The testator begins this codicil by referring to his "foregoing will," and then states a fact, namely, the absence of his nephews from this country, which makes it necessary to appoint others as executors in their place. And then he says: "As all my property is to go to my three daughters," I revoke the appointment of my nephews and appoint my three sons-in-law as my execu-tors. As we have said, the testator's property was de-vised and bequeathed to his daughters for life, in trust, and the said equitable life estates are, we think, the estates referred to in both codicils.

And in this connection it will be remembered that the testator, while he gave to Mrs. Thomas by the will only an equitable life estate, yet in charging her with the value of Blakeford, he uses language in the will sub-stantially the same as that used in both codicils, namely, that she and her representatives "shall not be entitled to my estate" until the charge had been made. It is obvious, we think, that in the codicils, as in the will, the testator had reference to the equitable life estates so elaborately set forth in the latter.

The remaining question relates to the mode of distri-bution after the expiration of the equitable life estates created by the will.

The testator had three daughters, Mrs. May, now Mrs. Thomas, Mrs. Levering and Mrs. Thom. The latter

died in 1861. There is no question here in regard to the share in which she enjoyed a life estate. After her death it passed to her two sons, the only descendants who survived her, and has been long since actually distributed to them, except their interest in the house and lot on North Charles street, in Baltimore City, which is mentioned in these proceedings.

Mrs. Levering died in September, 1889, both children and grandchildren surviving her, and the remaining daughter, Mrs. Thomas, is still living, but has neither children nor descendants.

The Court below decreed that Mrs. Levering's share should be divided among her children, and the guardian *ad litem* of her grandchildren has appealed on the theory that said grandchildren are entitled to participate in the distribution of her share with their parents.

The language of the testator is, "at the death of my said daughters or any of them, her share to pass to her issue, children or descendants." The plain meaning of these words would seem to be that the testator intended to make provision for children in the first instance, if any, and for the descendants of deceased children. In the case of *Horne vs. Lyeth*, 4 *H. & J.*, 437, it is held that "the word *issue* in its natural, and often in its legal, sense, means children. And in 2 *Redfield on Wills, p.* 38, *note* 5, it is said that "the term '*issue*,' in its primary signification, imports '*children*,' and that it is a secondary meaning, by which it has been held to include the issue of issue in an indefinite descending line. It is susceptible, more naturally than 'children,' of including all descendants, but the primary sense certainly is that of direct issue. And it is only in a secondary sense that it includes descendants." Judge REDFIELD (2 *Redfield on Wills, sec.* 3, *ch.* 1, *pp.* 37–42,) expresses the view that the construction which was placed upon the word "issue" by the older English authorities, in which it was held

that the primary meaning of the word "*issue*" is "*descendants*," would in most instances defeat the intention of testators, the word "issue" as now generally used being synonymous with "children," unless, of course, there is something in the context to show that it is used in a different sense.

And especially is this so when the words "*issue*" and "*children*" are used in connection as they are in the will before us. *Carter vs. Bentall,* 2 *Beavan,* 552.

Having thus provided for the case of a daughter dying with issue living, the testator proceeds to make provision for another contingency, namely, that of a daughter dying without issue. And he provides that in such event her share shall pass to her surviving sisters and their descendants; that none of his daughters should take more than a life estate, and that the whole of the shares *thus bequeathed*—that is, to a daughter dying without issue—shall ultimately vest in the descendants of his daughters, or any of them who shall leave descendants, *in which case* the distribution was to be made among such descendants *per capita.*

The clause just referred to does not appear to have any application to the case of a daughter dying leaving issue, children or descendants. This contingency had already been provided for. The words "thus bequeathed" and "in which case" would seem to refer to the second contingency—that of a daughter dying without issue.

We conclude, therefore, that in the will before us the expression "issue, children or descendants" confer upon the children of Mrs. Levering, all of them surviving her, an absolute estate in her share to the exclusion of her grandchildren.

While it would follow from what we have said that Mrs. Thomas' share, at her death, without issue then living, would, according to the terms of the will itself,

be divided *per capita* among all the descendants of Mrs. Levering and Mrs. Thom living at the time of the distribution of such share, yet inasmuch as Mrs. Thomas is still living, we do not think it would be proper at this time, in anticipation of her death, to make any disposition of her share.

We have not considered the motion to dismiss the appeal of William R. Brewer, guardian *ad litem*, because all the questions presented by his appeal are before us, and have been considered on the appeal of Mrs. Thomas.

It follows from what we have said that the decree of the 4th October, 1890, will be reversed in so far as it undertakes to declare that if Mrs. Thomas shall die without issue living at the time of her death, her share shall pass to and be vested in the persons named in said decree as entitled thereto, and in all other respects said decree will be affirmed.

It follows, also, from what we have said, that the order of the Court below passed in the case of *Clintonia G. Thomas vs. Lewis R. Levering, Pauline M. Levering, and others*, dismissing the petition of said Clintonia G. Thomas, asking for the vacating of the decree in said case, must be affirmed.

All costs to be paid out of the fund to arise from the sale of the property mentioned in the proceedings.

> *Decree reversed in part, and*
> *affirmed in part, and*
> *cause remanded.*

(Decided 20th February, 1891.)

MILLER, J., dissented.

The petition for a modification of the decree in these cases, and for the dismissal of the appeal of William R. Brewer, guardian *ad litem* of the infant children, was

disposed of by the Full Bench, and Judge FOWLER delivered the opinion of the Court as follows:

A petition has been filed by Pembroke L. Thom and William H. DeC. W. Thom, two of the appellees in these cases for a modification of the decree in respect of costs, and for a dismissal of the appeal of William R. Brewer, the guardian *ad litem* of the infant children. This motion to dismiss the appeal of the guardian *ad litem* was discussed, but not very fully, at the hearing of the cause, and it is again renewed, reliance being placed on the same grounds and the same authorities which were relied on then.

The Code, Art. 5, sec. 24, (Appeals) restricts the right of appeal to parties to the suit, and it is contended that the guardian *ad litem* is not such a party. But we cannot agree to this view.

It is true that it has been held by this Court that a *prochein ami* is not a party to the suit within the meaning of the Evidence Acts. *Trahern vs. Colburn, Ex'r*, 63 *Md.*, 103; but it by no means follows that a next friend or guardian *ad litem* may not be a party to the suit as contemplated by the provisions of the Code regulating appeals.

It was formerly supposed, and it was so contended in the case of *Deford vs. The State, use of Keyser*, et al., 30 *Md.*, 179, that a *prochein ami* could not make the suggestion and affidavit for the removal of a case, because the Code, Art. 75, sec. 97, requires them to be made by a party to the proceeding. But in disposing of the question this Court said, "The *prochein ami* or next friend, it is true, is not a technical party to the cause, but he is a party within the meaning and contemplation of the Constitution and the Acts of Assembly" relating to the removal of causes, "and therefore capable of making the affidavit and suggestion." And we can see no reason why a guardian *ad litem* should not be so far considered a party

to the suit, as to have the right of appeal on behalf of the infants for the purpose of protecting or advancing their interests; otherwise not being themselves able or competent in contemplation of law to take any step in the cause, they would be compelled, in the absence, as here, of a regularly appointed guardian, to submit however unjust or oppressive a judgment or decree might be.

In the opinion heretofore filed, we said we would not consider the motion to dismiss the appeal of the guardian *ad litem*, "because all the questions presented by his appeal are before us on the appeal of Mrs. Thomas." It is now, however, contended that the only question which could arise on Mrs. Thomas' appeal was, whether she was entitled to an absolute, or only an equitable life estate, and that no question of distribution after her decease can be properly determined on her appeal.

The decree of the Court below not only construed the will, but declared and named the persons who should take by virtue of that construction, and thereby distributed the estate. From this decree—not from any particular part of it—Mrs. Thomas appealed. Her order for appeal will be found on page 32 of the record. In her answer she asks that the parties among whom the estate of the testator is to be divided, may be determined, and in the sixth paragraph thereof she prays that the will of her father may be interpreted, and that the Court will determine the distribution proper to be made thereunder. This the Court below did by its decree from which Mrs. Thomas appealed. Her appeal thus bringing up all the questions—those of distribution as well as those of construction—which were fully argued by all the counsel, and considered by this Court in its opinion, she will not now be allowed to say that her appeal did not raise the question of distribution. But, as we have said, this question is directly presented by the appeal of the guardian *ad litem*.

By the decree of this Court filed in this cause, the costs were directed to be paid out of the fund to arise from the sale of the property on North Charles street, in the City of Baltimore, this being the only property involved in this controversy in which the petitioners, as well as all the other parties are jointly interested.

It is true, as alleged by the petitioners that their right to one undivided third of this property has not been questioned, so far as we are informed, yet they, like all the other parties to this proceeding, are interested in the construction of the will, and the distribution of the estate.    Indeed, it was conceded on all hands that the Charles street house must be sold for the purpose of partition, and the main object of the suit was to determine the construction of the will, and thereby ascertain the persons to take thereunder.    We were, therefore, of opinion, and still think, that all should join in paying the costs, and that they should be paid out of a fund in which all are interested.    Under any circumstances, of course, the petitioners would be properly chargeable with their share of the costs incurred in the partition of the Charles street house.

> *Petition dismissed, the petitioners*
> *to pay the costs thereof.*

(Decided 18th June, 1891.)