# ELISE W. LEVERING ET AL. *vs.* MARTHA B. ORRICK

## ET AL.

*Construction of a Will—Bequest to Descendants.*

When there is a bequest to the descendants of certain persons the general rule is that all the descendants of every degree, living at the time of distribution, take equal shares *per capita*.

A testator gave the residue of his estate to trustees with directions to pay the income thereof to his three daughters during their natural lives, and provided that upon the death of any of his daughters her share should pass to her issue, &c., and in case any of his daughters should die without issue living at her death "then her share shall pass to her surviving sisters and their descendants." The testator also declared his intent that "the whole of the shares thus bequeathed shall ultimately vest in the descendants of my daughters, or any of them who shall leave descendants, in which case distribution shall be made among such descendants *per capita* and not *per stirpes*, and the descendants of my daughters aforesaid are to be considered as purchasers, and as such entitled to the principal or property itself from the time their rights respectively vest." One of the testator's daughters predeceased him leaving children. A second daughter died after the testator also leaving children. Then the third daughter died leaving no issue. At that time there were living both children and grandchildren of the other two daughters *Held*, that the share of the daughter thus dying without issue

should now be divided equally *per capita* among the living descendants, both children and grandchildren, of the two daughters who had previously died.

Appeal from a decree of the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John Wm. Marshall* (with whom were *W. Cabell Bruce* and *D. K. Este Fisher* on the brief), for Elise W. Levering, appellant.

*Archibald H. Taylor* (with whom was *E. P. Keech, Jr.,* on the brief), for De Courcey W. Thom, appellant.

*J. Wilson Leakin* and *J. Pembroke Thom,* for the guardian *ad litem* of Isabel R. Thom, *et al.*

*John Peirce Bruns,* for the guardian *ad litem* of Anne G. Thom, *et al.,* appellant.

*John Hinkley* and *Thos. Foley Hisky,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

In this case, the construction of the will of William H. DeC. Wright, deceased, which was before this Court in *Levering* v. *Thomas,* 73 Md. 451, is again brought up for review.

In the former case, the questions decided were, first, whether the will was revoked by the codicils thereto, and, if not, what was the true construction of the will and codicils standing together, so far as they related to the disposition of the share of Mrs. Victoria L. Levering, a daughter of the testator who died in September, 1889, leaving both children and grandchildren surviving her. The clause of the will which gave rise to that controversy, and which occasions the present controversy, is in the following words :

"I will and bequeathe all the rest and residue of my estate, wherever situated, and whatever it may consist of, real, per-

sonal or mixed, to my executors hereinafter named, and the survivor of them upon the following trusts, that is to say, to apply the income thereof, to the sole and separate use of my daughters during their natural lives, share and share alike, and at the death of my said daughters or any of them, her share to pass to her issue, children or descendants forever, but in case any of my said daughters shall die without issue living at her death, then her share shall pass to her surviving sisters and their descendants, it being my express will that none of my daughters shall be entitled to more than a life estate to their sole and separate use, but the whole of the shares thus bequeathed shall ultimately vest in the descendants of my daughters or any of them who shall leave descendants, in which case the distribution shall be made among such descendants *per capita* and not *per stirpes*, and the descendants of my daughters aforesaid are to be considered as purchasers, and as such entitled to the principal or property itself from the time their rights respectively vest."

It was determined in the former case that the codicils did not revoke the will; that each of the testator's three daughters took an equitable life estate in one-third of the testator's estate; and that upon the death of Mrs. Levering leaving surviving her both children and grandchildren, her share should be equally distributed among her children (*all of whom survived her*) to the exclusion of her grandchildren.   Mrs. Thom had died before the testator, her only descendants being two sons, who had received her share of the estate without question.

Mrs. Thomas, the third daughter, died in 1902, leaving no children or descendants living at her death, and the question here is as to the distribution of her share.

It appears from the testimony that at the time of Mrs. Thomas' death the descendants of Mrs. Thom were as follows: A son, Wm. H. DeC. Thom, still living, and his two children, Annie Gordon Thom and Mary Gordon Thom, both infants; also Isabel R. Thom and Ella L. Thom, both infants, children of a deceased son, Pembroke Lea Thom; and that the descendants of Mrs. Levering, at the time of Mrs. Thomas' death, were as follows: Three daughters, namely Miss Elise W. Levering, Mrs. Martha B. Orrick, and Mrs.

Pauline M. Levering; and the following grandchildren, Louisa Wright Orrick, Johnson Orrick, Harry A. Orrick, Jr., and Wm. H. DeCoursey Orrick, children of Martha B. Orrick, all infants; also Annie Lavely Levering, Paul Johnson Levering, Pauline Dorothy Levering, and Elise Wright Levering, children of Pauline M. Levering, all infants; there being thus in all sixteen descendants of Mrs. Thom and Mrs. Levering.

Upon a petition filed in the original cause, (decided in 73 Md. *supra,*) by Mrs. Orrick for the construction of the will as to the disposition of Mrs. Thomas' share, the Circuit Court of Baltimore City passed a decree on the 23rd day of December, 1902, declaring that by the true construction of said will, the share of Mrs. Thomas should now be divided *per capita* among all the sixteen descendants above named of Mrs. Levering and Mrs. Thom, that is to say one-sixteenth part thereof to each of said sixteen descendants free, clear and discharged of the trust under which said share had been held during the life of Mrs. Thomas, and appointed commissioners to make partition accordingly.

From this decree four appeals have been taken all of which are embraced in this record.

At the time of Mrs. Thom's death her only living descendants were her two sons above named, and at the time of Mrs. Victoria Levering's death her only living descendants were her three daughters above named; Louisa Orrick and Johnson Orrick, the two oldest children of Mrs. Orrick; and Victoria Levering, Louis Levering, Annie Levering, Paul Johnson Levering, and Pauline Dorothy Levering, five of the children of Pauline M. Levering. Ella Lea Levering, the first child of Pauline M. Levering, died before Mrs. Victoria Levering, and Victoria Levering and Louis Levering died afterwards, and before the death of Mrs. Thomas.

The first of these appeals is by Elise W. Levering, whose contention is that the two sons of Mrs. Thom living at her death, and the three daughters and seven grandchildren of Mrs. Victoria Levering living at her death, constitute, to the exclusion of other descendants of Mrs. Thom and Mrs. Lev-

ering, the class contemplated by the testator as entitled to take *per capita* the share of Mrs. Thomas, and that therefore, that share is now vested equally in the twelve persons above mentioned. This contention rests upon the theory that the descendants of Mrs. Thom were to be ascertained at her death and those of Mrs. Levering at her death, and that when so ascertained their respective interests vested accordingly.

The second appeal is that of Wm. H. DeC. W. Thom, whose contention is that the share of Mrs. Thomas "is now divisible *per stirpes* and not *per capita*, among all the descendants of Mrs. Levering and Mrs. Thom, living at the death of Mrs. Thomas, and that he is therefore entitled to have distributed to him one-fourth part of said share;" and in order to assert the claim to a distribution *per stirpes*, the position taken is that the phrase *per capita*, was only intended to apply to the case of one daughter only dying and leaving descendants, and the other two daughters dying without descendants, in which case the shares of these two were intended to be divided *per capita* among the descendants of the one leaving such descendants.

The third appeal was taken by the guardian of Anne G. Thom and Mary G. Thom, infant children of Wm. H. DeC. W. Thom, whose contention is that Mrs. Thomas' share is now divisible *per capita*, one-half among all the descendants of Mrs. Victoria Levering living at the death of Mrs. Thomas, and one-half among all the descendants of Mrs. Thom living at the death of Mrs. Thomas, and that therefore each of these infants is entitled to a one-tenth part of said share. This contention rests upon the theory that the descendants of Mrs. Thom and Mrs. Levering who were to take Mrs. Thomas' share, were to be such as answered that description at Mrs. Thomas' death, but that the descendants of each were to constitute separate classes for the *per capita* distribution directed.

The fourth appeal is by the guardian of Isabel R. Thom and Ella L. Thom, infant children of Pembroke Lea Thom, deceased, whose contention is that the share of Mrs. Thomas "was distributable at her death, one-half to the descendants

of Victoria L. Levering and one-half to the descendants of
Ella L. Thom; and that these infants are therefore entitled to
one-tenth of the fund."

Mrs. Thom having died in the lifetime of the testator, the
argument in behalf of these infants is, that at the testator's
death, Mrs. Thom's two sons took a remainder in one-half of
Mrs. Thom's share, subject to let in after-born descendants
of their mother who came into being before the death of Mrs.
Thomas, while Mrs. Levering's descendants would take noth-
ing until her death, and the death of Mrs. Thomas.

We have stated heretofore the only questions which were
*decided*, on the former appeal, notwithstanding the explicit ex-
pression of *opinion* by the Court as to the ultimate disposition
of Mrs. Thomas' share; and the counsel for the appellees, with
commendable frankness, have conceded that the question now
presented was not thereby rendered *res adjudicata*. We have
therefore given to it as full and unbiased consideration, as if it
had not been argued in the former appeal. In discharging
this duty, we have not only carefully read all the elaborate
briefs filed in these appeals, and examined the authorities
there cited, but we have also read the briefs filed in the former
appeal and consulted the authorities then presented to the
Court, and our conclusion is that the Court was entirely cor-
rect in saying, as it said in 73 Md. 459: "That Mrs. Thomas'
share at her death without issue then living, would, according
to the terms of the will itself, he divided *per capita* among all
the descendants of Mrs. Levering and Mrs. Thom living at
the time of the distribution of such share." The testator, in
providing for the case of *any* of his daughters dying without
issue living at her death, directs that "her share shall pass to
her surviving sisters and their descendants * * *in which
case* the distribution shall be made *per capita* and not *per
stirpes*, and the descendants of my daughters aforesaid are to
be considered as *purchasers*, and as such entitled to the prin-
cipal or property itself from the time their rights respectively
vest."

In *Williams on Executors*, vol. 2nd., 7th Amer. ed., star page

976, under the word "Descendants," it is said : "Under this description is comprised every individual proceeding from the stock or family referred to by the testator."

In 2 *Jarman on Wills*, 632 : "Descendants are issue of every degree." See also *O'Hara on Interpretation of Wills*, 307; *Theobald on Wills*, 157.

In bequests to descendants equally, or to all the descendants of any person, or to the descendants simply, the rule is all take *per capita* unless a contrary intention appears. 2 *Redfield on Wills*, 36 and 74; 1 *Roper on Legacies*, 126. The following are instances of the application of the rule. "£4,000 to the descendants of Frances Ince." Held, that great grandchildren were entitled to share with grandchildren. *Crossley* v. *Clare*, Ambler, 397. "Legacy to the descendants of A and B equally." Children and grandchildren take *per capita*. *Butler* v. *Stratton*, 3 Brown's Ch. 367. "Under the provisions of a will that the residue of an estate is to be equally divided between my brothers Edwin and Charles' children," the distribution is to be made *per capita*. *McIntire* v. *McIntire*, 14 App. D. C. 339.

In the present case Mrs. Thomas being the last of the sisters, her share cannot pass to her *surviving* sisters, and can only pass to their *descendants*, in which case the rule of law is that the distribution must be *per capita*, unless a contrary intention appears ; and here a *per capita* distribution is expressly ordered, and such descendants are declared to be purchasers, taking directly from the testator and not by limitation.

It was urged upon us that the predominant idea of the testator was that each of the daughters should have a life estate in their own share, and in the accrued share of a sister dying without issue, and that at the death of a daughter leaving issue, her descendants should have precisely the interest she had, and the case of *Slingluff* v. *Johns*, 87 Md. 273, was cited to show that such predominant idea must be gratified even if it should require the sacrifice of a particular conflicting intent. That case is *sui generis* in its facts, and in the language of the will, though quite within the rules of construction applied to it.

But here there is no such conflict of intent, and the predominant idea is that of ultimate bounty to *desendants*, which word, as was said in *Ralph* v. *Carrick*, 11 Ch. Div. 873, is less flexible than *issue*, and requires a stronger context to restrict its meaning.    In *Allender* v. *Keplinger*, 62 Md. 12, where an attempt was made by counsel to divide the testator's children into classes, the Court said: "The issue of all his children are spoken of collectively, and are regarded as composing one undivided body of persons, and the property is to be divided equally among the individuals who make up this body.    This being the intention of the testator, as expressed by the words of his will, we do not know that we can derive much aid from the consideration of the words of other wills which have been construed by the Courts."

In *Farmer* v. *Kimball*, 46 N. H. 440, there was a devise "to my cousins and to the children of my mother's cousins, to be equally divided among them;" and it was held the devisees took *per capita*, the Court saying: "The inference of an intention to divide the residue by classes is merely conjectural, and quite too uncertain to prevent the application of the general rule."    And that case was cited with approval in *Britain* v. *Carson*, 46 Md. 189, in declining to yield to a similar argument for a *per capita* distribution *among classes*.

In *Baker* v. *Baker*, 8 Gray, 121, the Court tersely said, in deciding a similar case, "Descendants are all those persons answering the description at the time fixed by the will for distribution," and therefore held posthumous children to be included.

If we were at liberty to *speculate* as to the intent of the testator, and to bind the letter of the will to such intent, there would be much plausibility in the argument of counsel for the infant children of Pembroke Lea Thom that the word "*respective*" should be supplied between the words "their descendants," so as to read "their *respective* descendants;" or if we shared his opinion that the word "*respectively*," in the expression "from the time their rights respectively vest" can only be gratified and given its full meaning by supplying the word *re-*

*spective* as above suggested, we might hesitate before rejecting his construction. But we are not at liberty to indulge in speculation as to the testator's intent, and we do not perceive any difficulty arising from the use of the word, *respectively*.

Mrs. Thom having died first leaving descendants, if Mrs. Levering had died without descendants, as Mrs. Thomas did, the rights of Mrs. Thom's descendants would have vested at the dates *respectively* of the death of Mrs. Levering and of Mrs. Thom, and it would not be material that the full right as to one-half of one of these shares *might* be deferred in actual possession until the death of the survivor of Mrs. Levering and Mrs. Thomas.

The danger of departing from the literal meaning of the testator's language, when the Court is satisfied that the literal meaning is the true meaning, is well illustrated in the present case, where the ingenuity and research of counsel has enabled them, by resort to hypothetical reasoning, and to conjectural situations, to present so many different methods of distribution, and to sustain each of them by interesting and able argument.

But having reached the conclusion we have stated, it would be an idle task to attempt a review of positions to which we cannot assent.

The decree of the Circuit Court will be affirmed. The costs above and below to be paid out of the fund.

*Decree affirmed.*

(Decided April 2nd, 1903.)