ADRIAN HUGHES, JR. *v.* SAFE DEPOSIT & TRUST COMPANY, TRUSTEE

[No. 2, January Term, 1940.]

*Decided March 5th, 1940.*

The cause was argued before BOND, C. J., SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*J. Stanislaus Cook,* for the appellant.

*C. Keating Bowie, Jr.,* with whom were *Bowie & Burke* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

The only question on this appeal is the construction of the third item of the will of Hannah E. Surgison, admitted to probate by the Orphan's Court of Baltimore City, November 24th, 1916, which is:

"Third; I give and bequeath unto Thomas Hughes, in special trust and confidence, the sum of one thousand dollars, and direct him to pay the net income therefrom to my nephew Adrian Hughes, into his own hands and not into the hands of any other person whether claiming by this authority or otherwise, for and during the term of his natural life and after his decease then to pay said net income into the hands of my niece, Mary J. Moncure for and during the life of the said Mary J. Moncure, paying the same into her own hands and not into the hands of any other person whether claiming by her authority or

otherwise and upon her decease then to pay and distribute the principal thereof to such of the children and descendants of the said Adrian Hughes as may be then living with power to the said Adrian Hughes to designate by will how the same shall be distributed, including or excluding such as he may by will designate, and in the event there are no such children or descendants, then to the children of said Mary J. Moncure then living, with power to said Mary J. Moncure to designate by will the method of such distribution, including or excluding as she may so desire."

In June, 1929, Thomas Hughes, on account of ill health, resigned as trustee. His brother, Adrian Hughes, who was appointed in his stead, died January 19th, 1930, without having exercised the power of appointment, and the Safe Deposit and Trust Company was appointed to succeed him. Mary J. Moncure died February 16th, 1939, so that the principal of the trust is now ready for distribution, and a bill has been filed by the trustee and some of the interested parties against the others, for an instruction as to whom distribution should be made and in what proportions. From a decree directing the distribution of the trust estate equally amongst the fourteen descendants of Adrian Hughes, his son, Adrian Hughes, Jr., appeals.

Adrian Hughes left three children, two sons and a daughter, of his eleven other descendants, ten are grandchildren, whose parents are all living. The other descendant and party is a great-grandchild, whose grandmother is the surviving daughter of Adrian Hughes.

The appellant's contention is that the will should be so construed that the grandchildren and one great-grandchild should only take in the event of the death of their parents, children of Adrian Hughes. As his children are all living, they would then take to the exclusion of their descendants. The brief admits that outside of this state the authorities are in a state of hopeless confusion whether competition between living parents and their children should be permitted. *Northern Trust Co. v.*

*Wheeler,* 345 Ill. 182, 177 N. E. 884. It has been repeatedly said by this, and other courts, that the intention of the testator is the law of wills, unless it violates some rule of law, and that the intention of the testator is to be gathered from the language of the will (*Miller on Construction of Wills,* 44), and that "rules of construction are rarely invoked except when the intention is obscurely or inaptly expressed." *Id.,* 64.

The question here is as to the meaning to be ascribed to the words "children and descendants of the said Adrian Hughes as may be then living." The appellant contends that "children and descendants," form two groups or classes, while the appellees contend that they form one group or class, and the latter was the view taken by the chancellor. It is a *concessum* that no will exactly like this has ever been before this court, but there have been wills in which the words children and descendants have been construed and defined, which can and should be applied here. *Levering v. Orrick,* 97 Md. 139, 54 A. 620, and cases there cited.

The appellant quotes from *Lobe v. Goldheim,* 153 Md. 248, 252, 138 A. 5, 6: "If one of the testator's grandchildren had died leaving direct descendants prior to the death of the last surviving child of the testator, it could scarcely be contended that the great-grandchildren of the testator should take equally with the grandchildren." In that case the will provided that the remainders, after the death of the testator's wife, and after the death of the last surviving child, should then go "to the heirs of all my children absolutely," and it was held that the word, "heirs," should be taken in its technical sense, and the heirs of the children took in a representative capacity, *per stirpes,* and not *per capita.*

In the case of *Halstead v. Hall,* 60 Md. 209, it was held that the grandchildren of a life tenant could not take while their parents were living, but that the language of that will so distinguished between the two generations. The will provided that after the death of a cousin the property should "descend to his female children and

grandchildren, and to their heirs forever." In the opinion the word "descend" was so construed as to make the distinction between living children and their children, the court saying, "Property cannot 'descend' from a grandparent to a grand-child whose parents are living.

In the will now before us the only qualification was the power in Adrian Hughes "to designate by will how the same shall be distributed, including or excluding such as he may designate," of his "children and descendants * * * then living." He failed to exercise this power of appointment, so that the direction of the testatrix to "pay and distribute the principal thereof to such of the children and descendants of the said Adrian Hughes as may be then living" must be obeyed. Adrian Hughes had the authority to leave the corpus of the trust to his children to the exclusion of their descendants, and in effect his aunt said, "If you don't do it, then I want all of your descendants to share equally in the fund," and there is nothing in her will to indicate that she intended any other division or distribution. We are asked to declare that her natural inclination would have been to prefer niece and nephews to their children, but the answer to that is that she did not say so, and to give her language this effect we would have to rewrite her will. As said in *Boulden v. Dean,* 167 Md. 101, 105, 173 A. 26, 27, "Where the language of the testator under consideration is so clear and plain as to leave no substantial doubt as to its meaning, considered in connection with all other language of the will, it will be accepted as conclusive and exclusive evidence of that intention, for the function of courts is to construe wills and not to write them, to ascertain an intent and not to create one."

There was just as much reason to discriminate between a child and grandchildren in *Brittain v. Carson,* 46 Md. 186, where the same contention was made as here, and rejected. John W. Randolph had left the residue of his estate to be "equally divided between (his) said daughter, Amelia J. Brittain, and the children of Virginia Carson," a deceased daughter. The executors filed a bill to con-

strue the will, the daughter contending that the legatees should take *per stirpes,* that is, that she should take one-half and her two nieces the other half. See also *Levering v. Orrick,* 97 Md. 139, 54 A. 620; *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 122 A. 526; *Miller on Construction of Wills,* 246, 255.

The language of the will is so unambiguous and the meaning so clear that there was nothing for the chancellor to do but decree an equal division of the corpus of the trust between the children, grandchildren and great-grandchild of Adrian Hughes, and the decree appealed from should be affirmed.

*Decree affirmed; costs to be paid out of the estate.*