KELLY, Guardian Ad Litem for William B. Smith, Jr.,
Minor *v.* MERCANTILE-SAFE DEPOSIT AND
TRUST COMPANY, Trustee u/w of
Hamilton Cassard et al.

[No. 488, September Term, 1970.]

*Decided June 28, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Frank M. Benson, Jr.*, with whom were *Rob Ross Hendrickson* and *Sauerwein, Boyd & Decker* on the brief, for appellant.

*Robert C. Prem*, with whom were *Niles, Barton & Wilmer* on the brief, for Elizabeth Thayer Smith et al., part of appellees. Submitted on brief by *William A. Grimes* and *Ober, Grimes & Shriver* for Mercantile-Safe Deposit and Trust Company, Trustee u/w of Hamilton Cassard, other appellee.

SINGLEY, J., delivered the opinion of the Court.

In *Sollers v. Mercantile-Safe Deposit & Trust Co.*, 262 Md. 606, 278 A. 2d 581 (1971), we had occasion to re-state the rule as regards the distribution to be made when there is a gift over in favor of descendants, other than the descendants of the testator, per stirpes. This case raises a related question: does a gift over in favor of a testator's daughter's "issue, share and share alike", without more, (i) call for a distribution among the daughter's descendants per stirpes, with the consequence that the first generation takes, and succeeding generations take only by representation of members of the first generation who are deceased, or (ii) does the language import a distribution among all living descendants, regardless of generation, per capita?

The Circuit Court of Baltimore City concluded that the former, and not the latter, was the correct answer to the question, and so do we.

Hamilton Cassard died domiciled in Baltimore in 1931.[1] By the terms of his will, he left the residue of his estate to Safe Deposit and Trust Company of Baltimore, now Mercantile-Safe Deposit and Trust Company (the Mercantile) in trust, to pay the income to his daughter, Elizabeth Hamilton Cassard, for life, and then provided:

> "Should my said daughter, Elizabeth Hamilton Cassard, die leaving issue, the trust hereby created is to terminate and the estate to vest in such issue, share and share alike."

Elizabeth Hamilton Cassard survived her father, married Henry W. Thayer, and died in February, 1969. At the time of her death, Mrs. Thayer was survived by a daughter, Elizabeth Thayer Smith; by two grandchildren, William B. Smith and Elizabeth Hamilton Thayer Smith (now Burroughs), both children of Elizabeth Thayer Smith, and by a great-grandson, William B. Smith, Jr., the minor son of William B. Smith.

The Mercantile instituted an equity proceeding for a construction of Mr. Cassard's will, alleging that it was in doubt whether a distribution of the trust assets should be made on the one hand only to Elizabeth Thayer Smith or, on the other, to all of the descendants of Elizabeth Cassard Thayer living at the time of her death: *i.e.,* Elizabeth Thayer Smith, William B. Smith, Elizabeth Hamilton Thayer Smith Burroughs, and William B. Smith, Jr., who would take in equal shares, per capita.

It seems to us that the question would be forever settled by *Clarke v. Clarke,* 222 Md. 153, 159 A. 2d 362 (1960), where a sharply divided Court held that a testamentary gift to the "issue" of a life tenant, with no intrinsic or extrinsic evidence of contrary intent, resulted in the child of the life tenant's taking to the exclusion

---

1. Had he died after January 1, 1970, the problem would have been resolved by Code (1957, 1969 Repl. Vol.) Art. 93, § 1-209, which became effective on that date and provides, in part: "Issue means every living lineal descendant except a lineal descendant of a living lineal descendant."

of the child's son, unless the use of the words "share and share alike" must be regarded as intrinsic evidence of a contrary intent. This case, which has been characterized as "the dawn of a new era of judicial enlightenment" rejected the rule of the English cases exemplified by *Davenport v. Hanbury*, 3 Ves. Jr. 257, 30 Eng. Rep. 999 (Ch. 1796) that a gift to descendants was a gift to all descendants of whatever generation, per capita. For a discussion of the historical background of the rule, see Schnebly, "Testamentary Gifts to 'Issue' ", 35 Yale L.J. 571, 591 (1926) ; Note "Distribution to 'Issue' ", 21 Md.L.Rev. 242 (1961) ; Note "Meaning of 'Issue' in Testamentary Gifts", 37 Mich. L.Rev. 630 (1939) and discussion 4 Page, *Wills* § 36.15 at 569 (Bowe ed. 1961).

This result reached in *Clarke, supra,* was a natural consequence of the holding in *Mazziotte v. Safe Deposit & Trust Co.,* 180 Md. 48, 50, 23 A. 2d 4 (1941) that a gift over in favor of "issue"

> "has usually been found equivalent to heirs of the body or those who would take in case of intestacy, thus rendering gifts to remoter descendants only substitutional, in place of gifts to remote ancestors."

and that the recipients take by purchase. See also, *Horwitz v. Safe Deposit & Trust Co.,* 172 Md. 437, 451, 192 A. 281 (1937) ; *Thomas v. Safe Deposit Trust Co. of Baltimore,* 73 Md. 451, 458, 21 A. 367 (1891) ; *Shreve v. Shreve,* 43 Md. 382, 396-97 (1875).

*Clarke* adopted what is sometimes called the Massachusetts rule, enunciated in *Jackson v. Jackson,* 153 Mass. 374, 26 N. E. 1112 (1891), which was followed in 3 *Restatement of Property, Future Interests* § 303 (1) at 1655 (1940) :

> "When a conveyance creates a class gift by a limitation in fε ɔr of a group described as the 'issue of B,' or as the 'descendants of B,' and the membership in such class has been ascertained

in accordance with the rules stated in §§ 292 and 294-299, then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift."

Comment i to § 303 (1) points out that contrary intent is clearly spelled out when there is a direction that the issue take per capita and not per stirpes, but that the situation is less clear when the distribution is to be made "share and share alike", as was the case in Mr. Cassard's will, or "equally" or "in equal portions." Miller, *Construction of Wills* § 96 at 257-58 (1927) points out that the use of such phrases is usually indicative of a per capita distribution.

This need not necessarily be the case, however. Sir John Romilly, then Master of the Rolls, identified the problem in *Robinson v. Shepherd,* 32 Beavan 665, 55 Eng. Rep. 261 (1863), *rev'd* 4 De G. J. & S. 129 (1863) when he observed, "How can I give the fund *'per stirpes* and not *per capita'* and at the same time give it 'in equal shares'." The answer is that where a testator or settlor uses words which import a distribution under the statute of distribution, the addition of phrases importing equality relates to equality of the primary distribution among the stocks and not equality of distribution among all those who take. This is the view taken by states which follow Restatement, *Property,* § 303. *B.M.C. Durfee Trust Co. v. Franzheim,* 349 Mass. 335, 207 N.E.2d 913 (1965) (applying Rhode Island law) ; *Lombardi v. Blois,* 230 Cal.App.2d 191, 40 Cal. Reptr. 899, 916 (1964) and *Warren v. First New Haven Nat'l Bank,* 150 Conn. 120, 186 A. 2d 794 (1962). We have reached a similar conclusion in *Cole v. Bailey,* 218 Md. 177, 180-81, 146 A. 2d 14 (1958) ; *Patchell v. Groom,* 185 Md. 10, 24, 43 A. 2d

32 (1945) ; *Plummer v. Shepherd,* 94 Md. 466, 469, 51 A. 173 (1902) ; *Rotmanskey v. Heiss,* 86 Md. 633, 634, 39 A. 415 (1898). See also, Simes, *The Law of Future Interests* § 774 at 232 (1956) and cases cited in footnote 84; Annot. 13 A.L.R.2d 1023, 1035, 1076 (1950).

We think that the appellant's reliance on *Hughes v. Safe Deposit & Trust Co.,* 177 Md. 587, 11 A. 2d 453 (1940) ; *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 122 A. 526 (1923) and *Allender v. Keplinger,* 62 Md. 7 (1884) is misplaced. In deciding *Clarke v. Clarke, supra,* the majority of the Court did not find it necessary to overrule *Requardt* or *Allender,* although the dissenting minority believed the cases had been overturned. As we see it, all three cases are distinguishable, since in *Hughes* the direction was that upon the death of the second life beneficiary the corpus be distributed "to such of the children and descendants of [the first life beneficiary] as may be then living"; in *Requardt* that "the corpus be divided equally among their [the testator's two brothers and sister] surviving children" and in *Allender,* to be divided equally among "the survivors of their [the testator's son and two daughters] issue." When *Requardt* and *Allender* were considered in *Clarke,* the Court found a clear expression of an intention that distribution was to be made per capita because of the emphasis on survivorship: a direction which negated the possibility of representation and called for a distribution different from that which would have obtained under the statute of distribution, now Code (1957, 1969 Repl. Vol.) Art. 93, §§ 3-101 through 3-104. It would seem that *Hughes,* which was not considered in *Clarke,* may be similarly distinguished.

Since we conclude that the phrase "share and share alike" relates to the division to be made among the first takers (and here Mrs. Smith was the only one) we shall not disturb the result reached below.

> *Decree affirmed; costs to be paid from the corpus of the trust estate.*