Rhode Island Hospital Trust Co., *Ex'r. vs.* Samuel W. Bridgham *et al.*

MARCH 28, 1919.

Present:  Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

*(1)  Wills.  "Issue."*

By the residuary clause of a will a life estate was given testator's wife and the remainder given "in fee simple absolutely and forever to my brother J. and his issue."  Both the wife and brother died in testator's lifetime. The estate consisted entirely of personal property, none of it being proceeds of real estate of which testator died seized.

*Held,* that the word "issue" was one of purchase, and under the circumstances presented by the case, unless such an intention appeared, a distribution among descendants *per capita* would be contrary to the intention of testator, and the word should be held to import representation.

*Held,* further, that testator's intention was upon the death of his wife to give the remainder of his estate to J. and all his descendants then living and since both the wife of testator and J. predeceased testator, the gift passed to the descendants of J. living at the death of testator *per stirpes* and not *per capita.*

*(2)  Wills.  "Issue."*

In a bequest of personalty the word "issue" is more readily construed as a word of purchase than it is in a devise of realty.  "Issue" used in a will as a word of limitation is not equivalent to "heirs" but to "heirs of the body."

*(3)  Wills.  Estate in Fee Simple.*

An estate in fee simple is not to be cut down to a lesser estate by subsequent ambiguous words unless the will shows a clear intention in the testator to do so.

*(4)  Wills.  "Issue."  Estate in Fee Simple.*

The word "issue" is in its nature ambiguous.  It may be of purchase or of limitation and its use alone would be insufficient to reduce the explicitly devised estate in fee simple to an estate tail.

Bill in Equity for construction of will.  Certified by Superior Court for determination.

Sweetland, J.  The above entitled cause is a bill in equity asking for a construction of certain provisions of the will of William H. Bridgham late of East Providence, deceased, and for instructions to the complainant, as executor of said will.  Said cause, being ready for hearing

for final decree, has been in accordance with the statute certified by the Superior Court to this court for determination.

Said will was executed April 28, 1906. The testator died July 29, 1916. Said will was duly admitted to probate in the town of East Providence. By the first article of the will the testator provides for the place of his burial; by the second and third articles the testator makes two pecuniary legacies; the fourth article contains the provision as to which construction is sought and direction is requested by the complainant; and in the fifth and concluding article the testator appoints the complainant executor of the will and revokes all other and former wills by him made. Said fourth article is as follows:

## "ARTICLE FOURTH.

"All the rest, residue and remainder of my estate of every kind whatsoever, real, personal and mixed, I give, devise and bequeath to the Rhode Island Hospital Trust Company, IN TRUST, nevertheless, to collect and receive the rents and profits, interest and income thereof, and to pay over and apply the same to the use of my wife, Honorine G. Bridgham, during and for the term of her natural life, and upon her death, I give, devise and bequeath all such rest, residue and remainder of my estate, in fee simple, absolutely and forever, to my brother, Joseph Bridgham, and his issue.

"This disposition of my residuary estate to my brother Joseph Bridgham and his issue, is made because my brother Samuel W. Bridgham has an ample estate of his own."

By the allegations of the bill which are admitted by the respondents it appears that the testator's wife Honorine G. Bridgham and the testator's brother Joseph Bridgham died during the testator's lifetime and that "All of the property which is the subject matter of this bill is personal property and is either personal property of which said William H. Bridgham was possessed at the time of his death, or the proceeds or accumulations of such personal property, and

that none of said property is the proceeds of real estate of which the said William H. Bridgham died seized."

The complainant seeks the direction of the court "as to its duties as executor under the circumstances set forth and particularly as to which and how many of the respondents are entitled to share in the distribution of the residue of said estate under the provisions of said fourth article and as to in what proportions such respondents are entitled to share such residue." The respondents are Samuel W. Bridgham, Ida F. Bridgham and Eliza H. Appleton, children of Joseph Bridgham, and Frances M. Bridgham, Samuel W. Bridgham, Jr., and Jesse C. F. Bridgham, grandchildren of Joseph Bridgham and children of the respondent Samuel W. Bridgham. These three children and three grandchildren constitute all of the descendants of Joseph Bridgham. They were all alive at the time of the execution of said will except the last named grandchild, Jesse C. F. Bridgham, who was born May 4, 1908, eight years before the death of the testator. All of said children are of full age. Said grandchildren are minors and are represented before us by a guardian *ad litem.*

The three respondents first named, the children of Joseph Bridgham, in their answer and before us claimed that they are exclusively entitled to one third each of said estate in the distribution of the residue. It is claimed before us by the guardian *ad litem* in behalf of the infant respondents that each of said infant respondents, as one of the issue of Joseph Bridgham, living at the time of the death of the testator's wife, is entitled to either one-sixth or one-seventh of the residuary estate to be distributed.

The portion of the fourth article with reference to which construction is sought, is that in which the testator provides for the disposition of his residuary estate after the death of his wife. The language of the provision is as follows: "and upon her death, I give, devise and bequeath all such rest, residue and remainder of my estate, in fee simple, absolutely and forever, to my brother, Joseph Bridgham,

and his issue." As to this provision the adult respondents, children of Joseph Bridgham, suggest to the court three possible constructions, either of which if adopted by us will support their claim to the entire residue of the estate. These claims are *first*, that said provision should be held to constitute a devise in fee simple to Joseph of the testator's real estate and an absolute bequest to Joseph of the testator's personal estate; and that said bequest of personalty did not lapse by reason of the death of Joseph in the lifetime of the testator, but took effect and operated as a bequest to said three respondents in accordance with the provision of Chapter 254, Section 31, Gen. Laws, 1909; *second*, that the words "and his issue" may be construed as words of limitation, giving to Joseph a fee tail in the testator's real estate and an absolute gift of the personal estate in accordance with the rule that language, which in a devise of realty would create an estate tail, will if the property be personalty give an absolute estate; and *third*, if the word "issue" shall be regarded as a word of purchase and not of limitation it should be construed to mean "children" and not descendants generally. And if the gift to Joseph and his issue should be held to constitute a bequest to a class, of which Joseph was one member, then said children would take the whole of said residue as the members of such class surviving at the time of the death of the testator's wife; or, if the bequest should be held to be a gift to Joseph and his issue as individuals then each of said children would take one fourth of said estate under the provisions of the will, and the one fourth share bequeathed to Joseph would fall to said children under Chapter 254, Sec. 31, Gen. Laws, 1909, *supra*, which provides that certain legacies shall not lapse. And said respondents further urge that, whether the word "issue" be interpreted as meaning "children," or as meaning "descendants," said adult respondents should take by right of representation to the exclusion of the other respondents, the remoter issue of Joseph. Said respondents have not explicitly formulated all of said claims, but those

which we have named appear to be fairly deducible from the argument and brief of their counsel and seem to us to state the limit and extent of their contention made before us. We will consider these claims in the order in which we have stated them.

As to all of said claims the adult respondents urge upon us the generally accepted doctrine that "it is the duty of the court in construing a will to bear in mind the circumstances under which it was made so as to look at it as far as possible from the testator's point of view." *In Re Boardman, Petitioner*, 16 R. I. 131; and the respondents quote in their brief the first portion of the following language of this court in *Perry* v. *Hunter*, 2 R. I. 80: "In construing a will, we admit the rule that courts are to put themselves in the situation of the testator with reference to the property and the relative claims of his family, the relations subsisting between him and them and the circumstances which surrounded him. But this rule is intended to aid in the construction of the will, where the provisions are doubtful or may admit of more than one interpretation, and not to control the plain meaning of the language of the will. Where this language is clear and explicit it must prevail." The only information which we have as to the circumstances surrounding the testator at the time of making said will is that afforded by the will itself and the undisputed facts alleged in the bill or agreed to by the parties. From those sources it appears that the testator married somewhat late in life; that previous to his marriage he resided at the Bridgham farm in East Providence, sharing and occupying with his brother, Samuel W. Bridgham a house on said farm; that the testator's brother Joseph with his family occupied another house on said farm; that the respondent Samuel W. Bridgham, son of Joseph, with his family also occupied a house on said farm; that these residences were in close proximity to each other; that said testator was on terms of greatest intimacy with his brother Joseph and his children and was well aware of the existence

of the infant respondents Frances M. Bridgham and Samuel W. Bridgham, Jr.; that shortly before the execution of said will the testator married and soon after its execution he went abroad with his wife and did not thereafter reside on said Bridgham farm; that the respondent Ida F. Bridgham at the time of the making of said will was unmarried and is now unmarried; that the respondent Eliza H. Appleton was at the time of the making of the will unmarried and is now married but without issue; that the infant respondent Jesse C. F. Bridgham was born May 4, 1908, after the execution of said will.

If by reason of ambiguity in the language of the will we were justified in seeking intrinsic aid as to its construction we would find nothing in the facts, recited above, which would throw light upon the intention of the testator with regard to the provision under consideration.

As to the first claim of the adult respondents that the provision in question may be construed as a devise in fee simple to Joseph of the testator's entire real estate and an absolute bequest to Joseph of all the testator's personal estate, these respondents urge that such intent may be found in an examination of the whole will and in the circumstances surrounding the testator. We have already pointed out that the testator's circumstances fail to furnish the basis for even a conjecture as to his intention, and the only general intent to be found in the will is the wish to give the income of his residuary estate to his wife during her life and upon her death to make an absolute gift of said estate; the meaning of which latter provision we are now seeking to determine. These respondents further urge that the concluding sentence of the fourth article indicates the testator's intention to give the residue after the death of his wife to Joseph absolutely. The apparent purpose of that sentence is to explain the testator's reason for making no gift to his brother Samuel and its language affords no assistance in the determination of the nature of the gift to Joseph, unless by the repetition of the words "and his issue" it should be

regarded as furnishing some indication that those words were used by the testator as words of purchase in the gift "to my brother Joseph Bridgham and his issue." This first position of said respondents requires us either to ignore the words "and his issue" or to treat them as superadded words of limitation. They should not be disregarded. They must be taken either as words of purchase or as words of limitation. The testator has specifically made an absolute gift in fee simple. To support a claim that the words "and his issue" are used merely as superadded words of limitation after the devise in fee simple, they must be construed as equivalent to the expression "and his heirs"; but the word "issue" used in a will as a word of limitation is not equivalent to "heirs" but to "heirs of the body," which import not a fee simple but a fee tail. Such construction would lead to the ambiguity of a gift in fee simple to be held in fee tail; which ambiguity is avoided if said words are treated as words of purchase. In a bequest of personalty the word "issue" is more readily construed as a word of purchase than it is in a devise of realty. "In gifts of personalty the tendency seems to be to treat 'issue' as a word of purchase rather than a word of limitation." 2 Jarman on Wills, 1930 n (h). "The construction by which a devise of real estate to A. and his issue is held to give A. an estate tail effectuates the intention as far as possible while to hold that a bequest of personal property to A. and his issue gives A. an absolute interest defeats the intention because the issue takes nothing." 2 Jarman on Wills, 1199.

The *second* position of said adult respondents is equally untenable. The rule, that language which in a devise of realty would create an estate tail will if the property be personalty give an absolute estate, although not always followed by the courts may be considered as a generally accepted rule in the construction of wills. Such rule has been recognized by this court. *Bailey* v. *Hawkins*, 18 R. I. 573, at 584; *Hartwell* v. *Tefft*, 19 R. I. 644; *In re*

*Tillinghast*, 25 R. I. 338. In the will before us the testator has in terms coupled a disposition of both real and personal estate, although at the time of his death he was possessed of personalty only. In the consideration of this suggestion of the adult respondents it is necessary to examine the language devising the realty and determine if it would create an estate tail, for that is the condition upon which depends the application of the rule invoked. The testator in terms provides for the creation of an estate "in fee simple absolutely and forever." This language considered alone undoubtedly created a fee simple estate.

(3) Does the addition of the words "and his issue" change such devise to a fee tail? It is a fundamental principle of construction that an estate in fee simple is not to be cut down to a lesser estate by subsequent ambiguous words, unless the will shows a clear intention in the testator to do so. *Briggs* v. *Shaw*, 9 Allen, 516; *Schmaunz* v. *Goss*, 132 Mass. 141. The word "issue" is in its nature ambiguous. It may be of purchase or of limitation and its use alone would be insufficient to reduce the explicitly devised estate in fee simple to an estate tail. The effect of the language of the devise differs materially from that of a devise to a man and his heirs followed by a limitation over in case of his dying without issue. The latter form of devise is the subject of a well recognized exception. In such a devise the fee simple, ordinarily created by a devise to a man "and his heirs," is reduced to a fee tail by implication, "on the ground that the testator has by the words introducing the limitation over explained himself to have used the word 'heirs' in the preceding devise in the qualified and restricted sense of heirs of the body." I Jarman on Wills, 657. The basis upon

(4) which said respondents have asked for the application of the rule does not exist in this case, as the language of the devise before us would not create an estate in fee tail in the realty.

We are of the opinion that there is no warrant to be found in the will for disregarding the expression "and his issue"

or for treating it as embodying words of limitation, which either create an absolute gift to Joseph alone or cut down the devise of a fee simple to a fee tail and give the personalty absolutely to Joseph. The testator's plainly expressed intention is effected by treating such expression as words of purchase.

We now reach the third position of the adult respondents, which in part is that the word "issue," if treated as a word of purchase, should be interpreted to mean "children" and not descendants generally. In urging this as an unqualified rule the claim is clearly contrary to the great weight of authority in this country and in England. Said respondents are not supported by most of the reported cases which are cited by them as authorities upon this point. When used as a word of purchase "issue" is not a term of exact and inflexible meaning. By the context it may appear that the testator used it in the sense of "children" and then it must be so interpreted, but unless that is apparent or unless its meaning has been fixed by statute it will be interpreted in its legal sense of "descendants." Chancellor Kent in his Commentaries has urged that the intention of a testator will generally be effected by treating the word as synonymous with "children" unless a contrary intention appears in the will. And this view is approved by Judge Redfield, in 2 Redfield on the Law of Wills, p. 38, n. 9; but courts generally have not followed these text-writers. It has been frequently claimed and was so argued before us by these respondents that "in the ordinary parlance of laymen it means children and only children." It is by no means clear that this contention as to the popular meaning of the term "issue" is justified. Lord Loughborough in *Freeman* v. *Parsley*, 3 Ves. 421, said: "In the common use of language as well as in the application of the word 'issue' in wills and settlements it means all indefinitely." And in *Soper* v. *Brown*, 136 N. Y. 244, the court in speaking of what was the popular meaning of the word said: "It is very unusual, I think, for a parent to speak of his children as his issue

either during life or in a testamentary instrument. When one speaks of the 'issue' of a person deceased, I think in most cases he would intend his descendants in every degree. In popular language if one speaks of the issue of a marriage he probably means the children of a marriage. The collocation of the words 'issue' and 'marriage' makes this in the case supposed the natural meaning." This view as to the popular meaning of the word is embodied in the Massachusetts statute. Revised Laws of Massachusetts, 1902, Chapter 8, Section 5. The Massachusetts Court states that the legal meaning of the word is also its popular meaning in that commonwealth. *Jackson* v. *Jackson*, 153 Mass. 374. This court in a very carefully considered opinion in *Pearce* v. *Rickard*, 18 R. I. 142, approved the doctrine "that the word 'issue' unconfined by any indication of intention includes all descendants; and that intention is required for the purpose of limiting the sense of that word, restraining it to children only." It appears to us that that is the interpretation of the word established by our decisions and amply supported by the weight of authority. In the case of *Pearce* v. *Rickard*, *supra*, the court was considering a bequest to a trustee for the benefit of one R. with direction that at the time of the decease of R. said trustee should pay, transfer and deliver over the said trust property then remaining to the lawful issue of said R. then alive. The court in that case carried the interpretation of the word "issue" to what may be termed its logical result and directed that upon the death of R. the trust fund should be distributed *per capita* among the descendants of R. then living, grandchildren taking equal shares with children and the children of living children taking in competition with their parents. The court found nothing in the gift to issue in any way substitutional in its nature or as indicating that issue were to take in a representative or *quasi* representative way, and probably felt constrained to reach its conclusion upon the matter of distribution as the result of its general determination that "issue" in the provision before it meant descendants gen-

erally and not immediate descendants or children. In *Freeman* v. *Parsley*, 3 Ves. 421, the court had under consideration a gift to be divided between the lawful issue of R. share and share alike. The court held that the descendants of R. living at the time of her death took *per capita* and not *per stirpes*. In that case Lord Loughborough said: "I very strongly suspect that in applying that to this will I am not acting according to the intention, but I do not know what enables me to control it. If a medium could be found between a total exclusion of the grandchildren, and the admission of them to share with the parents, the nearest objects of the testator, that would be nearer the intention; as by letting in those, whose parents were deceased, to take the share the parents, if living, would have taken." In *Cancellor* v. *Cancellor*, 2 Dr. & S. 194, the Vice-Chancellor said: "Now it is certainly not very probable, *à priori,* that a testator should intend that parents and children and grandchildren should take together as tenants in common *per capita;* and the court will not very willingly adopt such a construction." It is apparent that courts generally have had a strong feeling that, in directing the distribution *per capita* of a gift to issue, they may be defeating the real intention of the testator, when such distribution will result in giving to issue of a more remote generation an equal share with those of a nearer generation; as for instance, permitting grandchildren and great grandchildren of deceased and living children to receive the same shares individually as the living children. Hence courts have sought for and have followed very slight indications of an intention on the part of a testator to use the word "issue" as an expression of representation; and they have been governed by such indications not only in the devise or bequest under consideration but also when it could only be inferred from the language of other parts of the will, entirely disconnected with such devise or bequest. In *Dexter* v. *Inches*, 147 Mass. 324, the court said: "The difficulty which was felt by Lord Loughborough in *Freeman* v. *Parsley*, 3 Ves. 421, in

finding a medium between total exclusion of grandchildren and the admission of them to share with their parents does not strike us as insuperable, supposing that he would have felt it in such a case as this. Nor do we think that the difficulty in stating a conclusion justifies a construction which the language used as well as the probabilities show to be contrary to what the testator could have meant." And the court in that case also said: " 'Issue' is a word which lends itself very easily to the expression of representation." In *Jackson* v. *Jackson*, 153 Mass. 374, the bequest under consideration was substantially as follows: the sum of ten thousand dollars should be put in trust, the income thereof paid to one Susan during her life, and at her death said trust fund should be paid to her issue. Upon her death said Susan left four children and five grandchildren the children of a living child. There was certain ambiguous language in the will from which it might be found that the testator intended the issue of Susan to take by right of representation. With reference to that matter the court said: "but we do not think it necessary to determine this" and then passed upon the question of the distribution of said trust fund plainly without reference to such ambiguous language. The court said: "The tendency of our decisions has been more and more to construe 'issue' where its meaning is unrestricted by the context, as including all lineal descendants and importing representation, and certainly when the issue take as of a particular time after the death of the testator and only the issue living at that time take, the issue of deceased issue take by a sort of substitution for their ancestors." The court then stated the following rule of general application: "We are of the opinion that when by a will personal property is given in trust to pay the income to a person during life, and on the death of such person to pay the principal sum to his issue then living it is to be presumed that the intention was that the issue should include all lineal descendants and that they should take *per stirpes* unless from some other language of the will a contrary in-

tention appears." After an extended consideration of the question we are of the opinion that in circumstances such as are presented in the case at bar and such as were before the court in *Jackson* v. *Jackson, supra,* unless such intention appears a distribution among descendants *per capita* will be contrary to the intention of the testator, and that in such case the word "issue" should be held to import representation. We have less hesitation in thus disregarding the authority of *Pearce* v. *Rickard, supra,* in this particular, because since that decision the General Assembly has by statute changed the rule of construction laid down in that case with reference to a devise or bequest to one for life and thereafter to his issue. Such statutory provision being now Chapter 254, Sec. 11, Gen. Laws, 1909, which is as follows: "Whenever a devise or bequest is made to one for life and thereafter to his issue, in any will hereafter made, such issue shall be construed to be the children of the life-tenant living at his decease, and the lineal descendants of such children as may have then deceased, as tenants in common, but such descendants of any deceased child taking equally amongst them the share only which their deceased parent if then living, would have taken." In so far as in said section the word "issue" is interpreted to mean "children" we must hold that it does not apply to the bequest now before us, as that is not one for life with the remainder over to the issue of the first taker, and the statute changes the rule of the common law merely with reference to such devises and bequests as are expressly named in said section. It is with reference to the construction of devises and bequests to issue after a life estate that the question of the manner of distribution most frequently arises and as to such bequests the statute now provides for distribution *per stirpes.* Hence, we feel greater freedom in changing the rule with reference to the distribution of those estates, extremely few in number, that are not within the scope of said statutory provision, in order that the construction of language similar to that now under consideration may conform to what seems

to us is the intention of the testator indicated by the use of the word "issue" without qualification.

Applying the conclusions which we have reached to the construction of the testamentary gifts under consideration we say that the testator's intention was upon the death of his wife to give the remainder of his estate to his brother Joseph and all his descendants then living. Since both the testator's wife and his brother Joseph predeceased the testator the gift passed to the descendants of Joseph living at the death of the testator *per stirpes* and not *per capita*. As all of the first generation after Joseph survived the testator the estate will be distributed among them in equal shares.

The complainant executor is instructed to distribute the remainder of said estate in its hands among the respondents, Samuel W. Bridgham, Ida F. Bridgham and Eliza H. Appleton, in equal shares. The parties may present to the court on April 4, 1919, a form of decree in accordance with this opinion.

*Tillinghast & Collins, Edward A. Stockwell*, for complainant.

*Thomas A. Jenckes, Samuel W. Bridgham, Everard Appleton*, for Ida F. Bridgham.

*Livingston Ham*, for other respondents.