CLARKE, JR. *v.* CLARKE, Substituted
Trustee, et al.

[No. 111, September Term, 1959.]

*Decided March 28, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles G. Page,* with whom was *William J. McWilliams* on the brief, for appellant.

*C. Maurice Weidemeyer,* with whom was *Thomas M. Schifanelli* on the brief, for Robert Fulton Clarke and Thomas B. Clarke, two of the appellees.

*Michael Demyan,* with whom was *John Demyan, Jr.,* on the brief, for Angela G. Clarke, Substituted Trustee, the other appellee.

HAMMOND, J., delivered the opinion of the Court.

We are called upon to decide whether a testamentary gift to the issue of a life tenant, with no intrinsic or extrinsic evidences of intent, results in a grandchild of the life tenant sharing equally with his father, a child of the life tenant, or whether the father takes to the exclusion of his son. The decision below was that the father took, and the infant son, by his guardian, appeals.

The will of J. Beauregard Clarke, a resident of Anne Arundel County who died in 1913, leaving a will executed two weeks before his death, left the residue of his estate in trust to pay the income to his widow for life, and at her death to his son Ernest for life and "from and after the death of my said son * * * then to his issue, absolutely." Ernest Clarke had three sons. One died before his father without issue; the other two survived their father, and are now living. Of these two, Thomas has no children, and Robert Fulton, one child— Robert Fulton Clarke, Jr.

In 1950, while Ernest Clarke, the life tenant, was still living, his grandson, Robert Fulton Clarke, Jr., by his mother, the divorced wife of Robert Fulton Clarke, brought suit for a declaration of his interest in the trust estate, for an accounting by the trustee and for protection against dissipation of the estate. The chancellor decreed that "by a true construction of the will * * * the word 'issue' means all descendants of J. Ernest Clarke," and that his grandson, Robert Fulton Clarke, Jr., "has a contingent remainder in the trust property dependent upon his survival of J. Ernest Clarke, upon which event he will be entitled to share equally with other descendants living at J. Ernest Clarke's death."

It was further ordered that the substituted trustee file a

report of her administration, and a bond for faithful performance. The appeal was from that decree, and the chief contention of J. Ernest Clarke, his wife Angela, the substituted trustee, and their two sons, Thomas and Robert Fulton, was that the word "issue" in the will should be construed to include only the children of J. Ernest Clarke, and the infant plaintiff thus had no interest in the trust estate.

This Court rejected that contention in the case entitled *In re Clarke's Will,* 198 Md. 266, and held that the infant had a potential future interest in the corpus of the trust sufficient to sustain the action of the chancellor in requiring the substituted trustee to account and post bond. All other questions, including the infant's contention that at the death of his grandfather Ernest, the life tenant, he would be entitled to share *per capita* with his surviving children and descendants even though his father should also then be alive, were held to be prematurely presented and "reserved for future determination as the need may arise."

When the life tenant died in 1958 and the trust estate was ready for distribution, the need arose to decide the infant's claim to equality with his uncle and his father. The chancellor held that the uncle and father took in equal shares to the exclusion of the infant, saying the testator had used "issue" as the equivalent of "children."

The parties agree that "issue" is used as a word of purchase, as a word indicating the class who are to take at the death of the life tenant.[1] They agree, further, that no evi-

---

1. The Rule in Shelley's case does not have application for several reasons. The will was executed after the abolition of the Rule by Ch. 144 of the Acts of 1912, Code (1957), Art. 93, Sec. 366. Also, the estate of the life tenant was equitable, those of the remaindermen are legal; the two not being of the same quality, the Rule would not apply. *Cowman v. Classen,* 156 Md. 428, 435-436. And see *Timanus v. Dugan,* 46 Md. 402, 417-419, where the devise was to "the said issue in fee" and it was held that the addition of the words "in fee" evidenced an intent that the two words first quoted were words of purchase. In *Shreve v. Shreve,* 43 Md. 382, 397-398, are found instances as to the effect of words of distribution upon the word "issue" as showing the estate in the first taker was for

dence of intent as to what the testator meant by the word "issue" can be found in the will or in the evidence. We concur in both instances. The opinion in the first appeal established that its meaning was broader than "children," a meaning it often has been given.[2] Miller, *Construction of Wills in Maryland*, Sec. 90.

We accept the contention of the infant appellant that the word "issue" was used by the testator to mean "descendants." [3]

The decision that "issue" means "all descendants" does not answer the ultimate and narrower question in the case—do the descendants of different generations take equally, or do those of the younger generation take only as representatives of deceased ancestors, that is, can a child compete with a living parent?

The infant says the answers to the questions are in the affirmative on the strength of the English rule (that "issue," unqualified when used as a word of purchase, is the equivalent of "descendants" and that the descendants, of whatever generation, take *per capita*—as was held in *Davenport v. Hanbury* (Ch. 1796), 3 Ves. 257, 30 Eng. Rep. 999, for example), which, he claims, the Maryland cases long ago made the law of this State. His father and his uncle argue that the later cases indicate that Maryland has adopted the rule of the *Restatement, Property, Future Interests,* Sec. 303—"When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of

---

life. See also *Horwitz v. Safe Deposit & Trust Co.,* 172 Md. 437. There is a full discussion in Miller, *Construction of Wills in Maryland,* Sec. 359.

**2.** The decree in the lower court entered after a mandate in the first appeal came down said "that by a true construction of the will of J. Beauregard Clarke, deceased, the word 'issue' means all descendants of J. Ernest Clarke * * *." Apparently this phraseology reflected the understanding of the parties of the meaning of this Court's opinion.

**3.** In *Goldsborough v. Martin,* 41 Md. 488, 501, where the question for decision was the rule against perpetuities, Judge Miller said for the Court: "The term 'issue' is here used without restriction, and embraces all the lineal descendants of the daughter." See also *Lee v. Waltjen,* 141 Md. 458, 462; *Ryan v. Herbert,* 186 Md. 453, 460.

B,' * * * then, unless a contrary intent * * * is found * * * distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate * * '*".[4]   The comment, speaking of the English rule, said, "Whatever justification this construction may have had in its origin, it is clear that its retention in the United States at the present time would cause serious deviations from the intent normally present in the mind of a conveyor limiting property to the 'issue of B.'"   The comment continues, referring to the Restatement rule:   "This rule rests upon the fact that conveyors normally use 'issue' as substantially the equivalent of 'heirs of the body,' and seldom desire the inequalities between stirpes which were unavoidable under the earlier English rule."

We have found no direct, no binding decision on the point in Maryland.[5]   There are cases in which the English rule has been referred to as stated but in all of them the basis of decision was the intent of the conveyor disclosed by the instrument.   In *McPherson v. Snowden*, 19 Md. 197, 227-230, which cited *Davenport v. Hanbury*, a deed of trust gave income for life to four daughters (the children of any daughter dying to take the mother's share during the continuance of the trust), after the death of the last daughter to die, the corpus was given outright to "all the issue of all the daugh-

---

4. The first illustration under Sec. 303 (1) assumes that the rule in Shelley's case has been abolished and embodies substantially the language of the will in the case before us, in a conveyance as follows: "To my Son B for life and thereafter to the issue of B absolutely" and says that the distribution will be exactly as if B had died intestate.

5. In the case of *Worthington v. Milnor* in the Circuit Court for Baltimore County, Daily Record of Aug. 16, 1940, in which counsel outstanding in the field, including the late Charles McHenry Howard, participated, the Court held that the word "issue," *simpliciter* referred to the children of the equitable life tenant and did not include her four grandchildren whose parents were living. In the opinion it is said: "The question is a novel one in this State. There is no decision of the Maryland Court of Appeals construing the word 'issue' in a will, used without qualification, and unexplained by other provisions in the will."

ters." A concessum in the case was that "issue" meant "children." From the contrast between the disposition of income which the children of a deceased life tenant took as her representatives, and the disposition of corpus to children "aggregated into a class, with no relation to their parents which would indicate that the issue should take through them," and from the terms of the grant of corpus ("to all the issue of all the daughters,") the Court found a clear intent to make the children the "immediate and equal recipients" of the trust estate.

In *Allender v. Keplinger,* 62 Md. 7, the will directed the distribution of the corpus after the death of the last life tenant "equally" and "share and share alike" among their issue. A clear intent was found that the surviving children and grandchildren of the life tenants (the parents of the grandchildren were dead) were to take equally, that is, *per capita.*

In *Levering v. Orrick,* 97 Md. 139, the will expressly ordered a *per capita* distribution among the descendants of a life tenant. A reference to the English rule clearly was dictum, since the express direction for a *per capita* division was a clear evidence of intent.

In *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 434, there were three equitable life tenants and children of a deceased life tenant took his share of the income during the continuance of the trust. No distribution of corpus was to be made until the death of the last of the life tenants to die. Then the will declared, "said trust shall cease and the corpus be divided equally among their surviving children." Speaking of the direction for equality of division, the Court held: "A distribution *per stirpes* would not satisfy that requirement. It would result in an unequal division of the estate among the designated remaindermen. It is only by a *per capita* distribution that the testator's declared purpose as to the disposition of the corpus can be given effect." The Court then referred to other cases in which the use of the words "equally" or "share and share alike" were found to evidence an intent to require a *per capita* distribution, and noted the dictum in *Levering v. Orrick, supra,* that the English rule is that a gift to "descendants" *simpliciter,* as well as "equally" or "share

and share alike," imports a per capita distribution to all descendants, of whatever generation. Clearly, this observation was not a necessary basis of decision in a case where plain intent was evidenced.

When we turn the coin we find that the Maryland cases stamped on that side favor the proponents of the rule of the Restatement, the appellees, to perhaps a slightly greater degree than those on the reverse side do the proponent of the English rule, the infant appellant, but that they are, by no means, conclusive of the question to be answered in the case.

In *Henderson v. Henderson,* 64 Md. 185, 192, the disposition was to three equitable life tenants, children of the testatrix, with remainders to their "lineal descendants"—subject to provisions "in case either of my said children should die without leaving issue." One child died before the testatrix. When she died her other two children claimed absolute estates under the rule in Shelley's case. The Court held that the Rule did not apply and that the children of the deceased child of the testatrix took an absolute interest in one-third of the estate, and that "it is also apparent that a trustee should be appointed * * * and that he should hold one-third of the property for each of the surviving children of the testatrix; and that on the death of either of said children of the testatrix, the share thus held should go, absolutely and free from the trust, to his or her issue, if there be any then living, *per stirpes* * * *." There was no discussion of the holding of the case that the distribution should be per stirpes.

In *Thomas v. Safe Deposit & Trust Co.,* 73 Md. 451, the language of the will was "at the death of my said daughters, or any of them, her share to pass to her issue, children or descendants * * *." The Court said: "The plain meaning of these words would seem to be that the testator intended to make provision for children in the first instance, if any, and for the descendants of deceased children."

*Mazziotte v. Safe Deposit & Trust Co.,* 180 Md. 48, was a case where the testator directed that upon the death of all the life tenants the trust should cease and the corpus be delivered "to the issue of my said four daughters, living at the termination of the trust per capita." The contest was be-

tween children and grandchildren of the life tenants. The eminent lawyer who represented the guardian *ad litem* for the infant grandchildren (who would take if the distribution were *per capita*) argued first in his brief that "issue" was synonymous with "descendants" and that where there is a distribution to "issue" *simpliciter,* it includes all descendants, who take *per capita* even though, in so doing, they take shares along with their living ancestors. Apparently in answer to this contention, Judge Bond for the Court said at page 50 of 180 Md.: "The word 'issue' in the disputed clause is clearly one of purchase. * * * And standing alone, the meaning of it has been a subject of difference of opinion. * * * Primarily, it embraces all lineal descendants. * * * But in Maryland it has usually been found equivalent to heirs of the body or those who would take in case of intestacy, thus rendering gifts to remoter descendants only substitutional, in place of gifts to deceased ancestors. *Horwitz v. Safe Deposit Co.,* 172 Md. 437, 451, 192 A. 281; Miller, *supra,* Sec. 358, p. 1012." Having disposed of the first contention of the guardian *ad litem,* the Court held the meaning of the word "issue" was always a question of intention and that since the gift to issue had been expressly *per capita,* remoter descendants would share equally with their parents, citing among other authorities *Restatement, Property, Future Interests,* Sec. 303, Comment (i). In his brief counsel for the guardian *ad litem,* in arguing his second point—that the words *"per capita"* showed an intent for equal divisions among children and grandchildren—had directed the attention of the court to the rule of per stirpes distribution (which he designated the minority rule) and to the fact that the *"Restatement of Property, Future Interests, which has adopted the position of the minority insofar as a remainder to 'issue' is concerned,* specifically supports the contention of the appellant that where the remainder is 'to issue per capita' children must share with their living parents," citing Sec. 303 (i). (Emphasis supplied.).

The language of Judge Bond, which has been quoted, does not refer to Sec. 303 (1) of the *Restatement, Property, Future Interests,* but its meaning is the same as that section, as is made manifest by the comment to Sec. 1, paragraph a, page

1658: "The change from the English rule began with increased emphasis upon the constructional factors sufficient to cause 'issue' to be construed *as substantially similar* to 'heirs of the body' and hence to cause the ascertainment of the takers thereunder by reference to the statute of intestate distribution."

The concurring opinion of Judge Henderson in *Patchell v. Groom,* 185 Md. 10 (in which Judge Collins and Judge Markell joined), agreed with the majority that descendants of living ancestors do not share in a distribution to descendants "then living *per stirpes* and not *per capita,*" but disagreed with the holding of the Court that the stocks of descent were the grandchildren of the testator and not his children, the life tenants. The concurring opinion referred to the view of the *Restatement, Property, Future Interests,* Sec. 303, that in a gift to a class composed of the issue of B or the descendants of B, distribution is made to those who would take and in such shares as they would receive under the applicable law of intestate succession. It was then said: "In so far as the Restatement requires distribution *per stirpes* of a gift to 'descendants' or 'issue,' without more, this reflects a change from the early English authorities, as to 'issue,' and from a dictum of Mr. Jarman in his first edition, as to 'descendants,' quoted by this Court in *Levering v. Orrick,* 97 Md. 139, 145, 54 A. 620, and by the majority opinion in the case at bar. The rule of the Restatement was, however, adopted by this court in *Mazziotte v. Safe Deposit & Trust Co., supra.*"

The views of the concurring minority in *Patchell v. Groom, supra,* became those of the Court in *Ballenger v. McMillan,* 205 Md. 94, where again the distribution was to descendants of the grantor of the trust after the death of the life tenants, and was expressly directed to be made *per stirpes* and not *per capita.* The holding was that the children of the grantor were the stocks of descent, and the Court quoted at length Judge Henderson's concurring opinion in *Patchell,* including the sentence that the Restatement rule had been adopted as Maryland law by the court in *Mazziotte.*

The infant plaintiff here argues that Judge Bond's paraphrase of the Restatement rule in *Mazziotte* did not mean

what it would appear to mean literally, but was talking of the word "issue" when construed as a word of limitation. Although the statement was made in connection with a will executed before 1912, it was made (a) in a case in which, like the one before us, the rule in Shelley's case was not applicable because the life estates were equitable and the remainders legal and (b) in a case in which the Restatement rule (Sec. 303) of per stirpes distribution where "issue" is used without more had been cited to the Court and (c) after the legislature had abolished the rule in Shelley's case by Ch. 144 of the Acts of 1912, now Code (1957), Art. 93, sec. 366, by providing specifically that "any form of words" that limit a remainder, after a life estate to "heirs of the body" should be construed as words of purchase. The appellant argues further that if it was intended to mean what it literally says, it was dictum and that the dictum has been perpetuated and compounded by dictum in the concurring opinion in *Patchell* and the majority opinion in *Ballenger*. Certainly it is true that Judge Bond's statement was not necessary to the decision in *Mazziotte*, although as we have noted, it has more force than it would otherwise because it was a direct answer to, and dispositive of, a contention pressed earnestly and at some length by distinguished counsel in the case. It is equally true that the reference to Sec. 303 of the Restatement was not necessary to the conclusion reached by Judges Henderson, Collins and Markell in their concurring opinion in *Patchell*, nor to the result reached by the Court in *Ballenger*, although it strengthened their conclusions, because the distribution under Sec. 303 would have been to the same persons who took under the decisions in those cases. Also, the statement in the concurring opinion in *Patchell*, repeated in *Ballenger* that the view of the Restatement had been adopted as Maryland law in *Mazziotte* may have read more into Judge Bond's language than this Court then intended.[6] Nevertheless, it would seem

---

6. Page, *Wills*, Cumulative Supplement, Sec. 1027, p. 416 n. 7, cites the *Mazziotte* case in support of the text (3 Page, Sec. 1027, p. 154) that "There is, however, a strong tendency to treat 'issue' as equivalent to heirs of the body; that is, such lineal descendants as would take under the statute of descent."

that approval of the Restatement rule has been indicated by this Court, at least implicitly, three times, as well as by Judges Henderson, Collins and Markell, concurring.

The first two instances were *Mazziotte* and *Ballenger,* and the third is *Robinson v. Mercantile-Safe Deposit & Trust Co.,* 214 Md. 30, in which the *Restatement, Property,* Sec. 303 (1), was quoted, as was comment (e) thereon, which states that where issue consisted of children of B and grandchildren of B, who are children of a living child of B, the grandchildren are wholly excluded from sharing in the distribution of the subject matter of the class gift unless a " 'contrary intent of the conveyor is found from additional language or circumstances.' " In *Robinson* the distribution was directed to be made "to the issue or descendants of said Emanuel E. Robinson living at that time, *per stirpes* and not *per capita,*" from which the Court found that the intent was that the distribution was to be stirpital, quoting comment (h) to Sec. 303 of the Restatement that conveyances "frequently contain language or have circumstances tending to corroborate the conclusions that the term 'issue' or 'descendants' has been used as substantially the equivalent of 'heirs of the body' and hence that distribution should be made in accordance with the law of intestate succession."

Faced with the situation where we find no case a conclusive and controlling precedent, we think the meaning of "issue" should be determined as the Restatement suggests. The English cases, which form the basis of the dicta in the cases relied on by the infant appellant, reached the result they did with reluctance and from force of necessity, as the judges of that day saw it. 3 Page, *Wills,* Sec. 1079 (Lifetime Ed.), notes that the English decisions originally came at a time when the share of a member of a class who died before testator, passed to the other members of the class, and not to his heirs or legal representatives, and then says: "The courts felt that they had no choice between permitting grandchildren to share equally with their parents and excluding them entirely, although they conceded that testator probably intended grandchildren whose parents were dead to take their parents' shares, and grandchildren whose parents were alive, to take

nothing. Being unable to give effect to testator's entire intention they preferred not to disinherit the grandchildren whose parents had died before testator, even at the expense of permitting the other grandchildren to take equally with their parents." Professor Page then points out that statutes with reference to lapse now prevent this result in almost all cases, and then says: "If the courts restrict 'issue' to the first generation, and distribute per capita, with representation if any of the first generation have died after the will was made and before testator dies, they will reach the result which the English courts wished to reach but could not. Some of the American states have construed such a gift in this way.

"Other courts persist in applying the English rule, and in dividing per capita among all generations, including those whose parents are living. Where this rule is still in force it is an interesting example of a rule, undesirable from the first, and selected only as a choice of evils, which has persisted so long that it is strong enough to force recognition although the alternative evil has ceased to exist, and the choice of the result which was desired from the first is perfectly possible."

The trend of the cases in other states is strongly in favor of the rule of the Restatement. In several instances Courts have reversed or repudiated earlier decisions favoring the English rule and have adopted the rule of the Restatement and, in so doing, have pointed out, as did Professor Page, the reluctance of the English Courts to reach what they considered an undesirable result, unwanted by the testator. States in which this has been done include: Pennsylvania—*In re Mayhew's Estate,* 160 A. 724 (see also *In re Thorn's Estate,* 46 A. 2d 258); Rhode Island—*Rhode Island Hospital Trust Company v. Bridgham,* 106 A. 149; Minnesota—*In re Thompson's Estate,* 279 N. W. 574. Other states increasingly have found the intention of the testator, where unrevealed except by the use of the word "issue" or "descendants," to be that surviving members of the first generation share among themselves per capita, with those of subsequent generations whose ancestors have died, taking by representation. Massachusetts was one of the earliest. In *Dexter v. Inches,* 17 N. E. 551, 554, Justice Holmes said for the Supreme Judicial Court of

Massachusetts: "The difficulty which was felt by Lord Loughborough, in *Freeman v. Parsley*, 3 Ves. 421, in finding a medium between total exclusion of grandchildren and the admission of them to share with their parents, does not strike us as insuperable, * * *" and in *Jackson v. Jackson*, 26 N. E. 1112, the court made the flat holding, which has since been followed in the State, that "when by a will personal property is given in trust to pay the income to a person during life, and on the death of such person to pay the principal sum to his issue then living, it is to be presumed that the intention was that the issue should include all lineal descendants, and that they should take *per stirpes,* unless from some other language of the will a contrary intention appears."

Other decisions reaching the same conclusion include: *Wyeth v. Crane* (Ill.), 174 N. E. 871, and *Wilmington Trust Co. v. Chapman* (Del. Chan.), 171 A. 222. Connecticut and South Carolina have reached the same result by holding that the meaning of "issue" is equivalent to that of the phrase "heirs of the body." See *Greenwich Trust Co. v. Shiveley* (Conn.), 147 A. 367, and *Rembert v. Vetoe* (S. C.), 71 S. E. 959. New Jersey seems to be the only State which continues to adhere strongly to the English rule. The writers in the law reviews generally support the Restatement rule and predict that more and more courts will follow it. See Schnebly, *Testamentary Gifts to "Issue,"* 35 Yale L. J. 573; Comment, 37 Mich. L. Rev. 630, 633; Willard Brooks, *Gifts to Issue— Another View,* 6 Ill. L. Rev. 230. See also 7 W. Res. L. Rev. 186.

We conclude that the decree below was correct in directing distribution to the children of Ernest Clarke living at his death in equal shares to the exclusion of the infant appellant.

> *Decree affirmed, costs to be paid from the trust estate.*

PRESCOTT, J., filed the following dissenting opinion, in which HORNEY, J., concurred.

Many members of the bench and bar, who have had occasion to examine carefully the question here involved, will

unquestionably receive the majority opinion herein with somewhat of a shock,[1] as it completely overrules a long line of previous decisions of this Court and adopts the rule stated in Restatement, *Property,* 303 (1), which is diametrically opposed to the Maryland rule established in something over one hundred years.

The question involved is a narrow one. A testator died leaving an equitable life estate to his son, and upon the death of the son, "then to his (the son's) issue, absolutely." The parties agree that the word issue is a word of purchase, i.e., it names the person or class in whom a new estate of inheritance is created;[2] and that there is nothing additional in the will nor in the evidence to indicate the testator's intent as to the actual mode of distribution. A previous appeal in this case determined that the word "issue" was not the equivalent of "children," an interpretation which, however, has been frequently accorded it. Miller, *op. cit.,* Section 90. And the majority, properly, accept the contention of the appellant that the word "issue" was used to mean "descendants."[3]

---

1. For examples, former Chief Judge Marbury, one of the ablest and most highly esteemed jurists this State has produced, who wrote the opinion in Patchell v. Groom, infra, and Frederick J. Singley, Jr., Esquire, whose splendid Md. L. Rev. article will be referred to later.

2. Words of limitation, of course, designate or limit the estate in the first taker. It is important in the case at bar to know the real distinction between words of purchase and words of limitation. When words of purchase are used, they designate the person or class to take, who take in their own right and not by representation, i.e., because they are heirs or distributees of an ancestor. Miller, Construction of Wills, Section 77. The statement in this note must be qualified by saying this was the Maryland rule before the filing of the majority opinion herein, as will be demonstrated in the remainder of this opinion.

3. This acceptance was due primarily to the decision in the previous appeal, In Re Clarke's Will, 198 Md. 266, where it was held the word "issue" did not mean "children" but "descendants." While not of controlling force, it is interesting to note that the majority make no mention or explanation of this significant language used in the opinion at page 271: "In the instant case there are several reasons why we think the word [issue] should be given the broader meaning [descendants instead of children]. * * * The

The question, then, to be determined, succinctly stated, is this: When a will creates a class gift by a limitation in favor of a group described as the "descendants of B" and there is nothing found from additional language in the will or circumstances to indicate the intention of the testator, what, under the Maryland law, is the proper distribution to be made, when the living descendants of B, at the time of his death, are two sons and one grandson—the grandson being the son of one of the living sons?

The majority state they find no binding decision in Maryland upon the subject.[4] If this be so, many great judges of this Court and learned text-writers upon the subject have completely misconstrued the decisions of this Court, as will be clearly shown below.

Before citing the Maryland cases, it may not be inappropriate to note that at a very early date there grew up two opposing rules upon the question here involved. Maryland adopted and has adhered to what is termed the "general" or

---

testator could have had no particular persons in mind, since his son did not marry until three years after the testator's death. *There is nothing to indicate that the testator intended to prefer his putative grandchildren over his putative great grandchildren.*" It is obvious that the present holding of the majority does prefer the grandchildren even to the *exclusion* of the great-grandchild. [Italics added in the quotation.]

4. In support of this statement, they adopt the rather unusual practice of citing an opinion of the late Judge Lawrence, at nisi prius, to the effect that the interpretation of the word "issue," simpliciter, was a novel one in Maryland. The learned judge would have had to have gone no further than to turn to the early case of Goldsborough v. Martin, 41 Md. 488 (1875), wherein it was said, "[t]he term 'issue' is here used without restriction, and embraces all lineal descendants of the daughter," to see that this statement is not accurate. If this quotation, alone, be not sufficient to show the statement inaccurate, see the interpretation placed upon the opinion in 2 A. L. R. 931. See also Timanus v. Dugan, 46 Md. 402, where the devise was to "issue in fee."

The holding of Judge Lawrence was simply that the word "issue" as used in the will before him meant "children," an interpretation frequently accorded the same. Shreve v. Shreve, 43 Md. 382, 401; Miller, op. cit., Section 90.

"basic" rule, while Massachusetts adopted and adhered to a minority rule.[5] Thus, we find in 2 A.L.R. 963, the following statement:

> "It is very generally held, except in Massachusetts, that under a gift to 'issue,' where the word is used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares per capita, and not per stirpes, as primary objects of the disposition. See McPherson v. Snowden (1862) 19 Md. 197; [and citations from other states] * * *
>
> "In Massachusetts, however, the courts have adopted the converse rule that the word 'issue,' where its meaning is unrestricted by the context, will be construed as importing representation."

I turn now to the Maryland decisions and authorities, and I shall cite one English case cited with approval by this Court.

In Miller, *Construction of Wills,* Section 96, we find the following:

> "in bequests to 'descendants equally,' or to 'all the descendants' of any person, or the 'descendants' simply (without the word 'equally' or 'all'), [in other words, when used as words of purchase] the rule is that all take per capita unless a contrary intention appears. Moreover in such a gift each individual of the stock takes an equal share *concurrently with, not in place of, his or her parent;* but where the distribution is to be per stirpes [when 'descendants' is used as a word of limitation] the principle of representation will be applied through all degrees, * * *." (Emphasis supplied.) See also Section 91.

---

5. This Massachusetts or minority rule was adopted in Restatement, Section 303 (1), in about 1941, and is now adopted in Maryland, for the first time, in the majority opinion.

In this statement, Mr. Miller is supported by a long line of Maryland and English decisions. The early case of *Davenport v. Hanbury* (1796), 3 Ves. 257, seems to be the leading English case involving the construction of the word "issue," without qualifying words, and the proper mode of distribution under a will where the term "issue" is so used. The Court carefully considered other cases where, because of other words in the wills, it was held that "issue" should take *per stirpes*, then stated, "[t]his case depends entirely upon the construction of these words, 'to Mary Davenport or her issue'"; and held that "issue," as there used, was a word of purchase, and when so used it had "always been considered as synonymous to and the same as 'descendants'; and whoever can make himself out a descendant of the person, to whose issue the bequest is made, had a right to be considered *persona designata* in that bequest," and that the distribution should be *per capita* (in this instance the descendants were one child and two grandchildren). This case was followed in later English decisions, which it will be unnecessary to discuss.

In *McPherson v. Snowden*, 19 Md. 197, the Court considered a trust made by deed which provided for the payment of income to four daughters of D, "and from and after the death of all of the aforesaid daughters * * *, then for the use and behoof of all of the issue of all of the daughters of * * * [D] and their heirs, in fee-simple." The parties agreed that the word "issue" as there used was the equivalent of children, and the question arose as to whether there should be a *per stirpes* or *per capita* distribution among the children of the daughters. The Court pointed out the well-recognized principle that in a deed, at common law, the word "issue" was a word of *purchase*, and said, "[i]f, therefore, the issue of the daughters take in their own right [because the word "issue" was a word of purchase as in the instant case], and not by representation, they take *per capita*. See *Davenport v. Hanbury*, 3 Vesey, 260."

In *Allender v. Keplinger*, 62 Md. 7, the same principle was applied. There, however, the will directed that the property be "equally" divided among the "lawful issue" of testator's

three children.   Distribution was made *per capita* among the children and grandchildren of the testator's children.

In *Levering v. Orrick*, 97 Md. 139, a *per capita* division among descendants of two deceased persons was ordered by the will, with a direction that the descendants were to be considered as *purchasers*.   In holding that all of the children *and grandchildren* of the two deceased persons took equally, the Court said:

> "In bequests to descendants equally, or to all the descendants of any person, or to the descendants simply, the rule is all take *per capita* unless a contrary intention appears.[6]  2 *Redfield on Wills*, 36 and and 74; 1 *Roper on Legacies*, 126.   The following are instances of the application of the rule.   '£4,000 to the descendants of Frances Ince.' Held, that great grandchildren were entitled to share with grandchildren.   *Crossley v. Clare*, Ambler, 397.   'Legacy to the descendants of A and B equally.'   Children and grandchildren take *per capita*.   *Butler v. Stratton*, 3 Brown's Ch. 367.   'Under the provisions of a will that the residue of an estate is to be equally divided between my brothers Edwin and Charles' children,' the distribution is to be made *per capita*.   *McIntire v. McIntire*, 14 App. D. C. 339.
>
> "In the present case Mrs. Thomas being the last of the sisters, her share cannot pass to her *surviving* sisters, and can only pass to their *descendants, in which case the rule of law is that the distribution must be per capita, unless a contrary intention appears; and here a per capita distribution is expressly ordered, * * *.*"   (Emphasis partly supplied.)   It will be noticed the principle by this time had become

---

**6.** This seems to be practically the same as the quotation from Miller, op. cit., Sec. 96, which I set out above. It seems to be fully supported by the authorities cited and the previous Maryland cases, and is repeated in subsequent Maryland decisions as late as 1956. The principle is, of course, in direct conflict with Restatement, Property, Section 303 (1), adopted in the majority opinion.

so firmly established, the Court refers to it as a rule
of law.

*Requardt v. Safe Deposit and Trust Co.,* 143 Md. 431, was
a case where the income was devised to testator's brothers
and sisters with a provision that on the death of any of the
brothers or sisters their respective shares in the income
should be paid to their issue until the last of the brothers and
sisters died, when "said trust shall cease and the corpus di-
vided equally among their surviving children." The Court
held that there was a clear direction to distribute the corpus
*per capita,* though there was a *per stirpes* division of the in-
come, reaffirmed *McPherson v. Snowden, supra,* and repeated
the rule that we have just quoted from *Levering v. Orrick,
supra,* and Miller, *op. cit.,* Section 96.[7]

*Judik v. Travers,* 184 Md. 215, is another case that force-
fully states the Maryland rule that we now have under con-
sideration. There, a *per stirpes* distribution was directed. In
giving effect to the specific language used by the testator, the
Court said:

> "The rule is that all take per capita, unless a con-
> trary intention appears, in cases of bequests to de-
> scendants equally, or to all the descendants of any
> person, or to descendants simply. *Levering v. Or-
> rick,* 97 Md. 139, 145, 54 A. 620; *Requardt v. Safe
> Deposit & Trust Co.,* 143 Md. 431, 435, 122 A. 526.
> See also *In re Stone v. Baker, supra.* The testator
> in the instant *case obviously wanted to make clear
> that his intention was contrary to the rule on this
> point and that is precisely the effect of the language
> used to do so."* (Emphasis supplied.)[8]

---

7. The membership of this Court at the time of this decision had
completely changed since the decision in *McPherson.* It was com-
posed of C. J. Boyd and Judges Briscoe, Thomas, Pattison, Urner
and Offutt. I mention the membership merely to show the great
number of judges of this Court who repeatedly stated the prin-
ciple as the settled law of this State.

8. At the time of this emphatic statement of the rule, the mem-
bership of the Court had again undergone a complete change. The

The same statement was repeated in *Patchell v. Groom*, 185 Md. 10, 14, 43 A. 2d 32; and in Singley, *Patchell and Groom, Revisited*, 15 Md. L. Rev. 1, we find the learned author stating:

> "It should be emphasized that these cases were not concerned with a gift to 'my descendants equally'; a gift to 'the descendants of A'; or a gift to 'my descendants', without a direction or an implication that a stipital distribution was intended. In these examples, the rule is that all take *per capita,* in the absence of contrary intention."

The latest expression upon the subject is found in *Robinson v. Mercantile-Safe Deposit & Trust Co.,* 214 Md. 30, 34, (1956), 132 A. 2d 841, cited in the majority opinion.[9] There we quoted from *Lycett v. Thomas,* 153 Md. as follows: " 'We do not understand that there is any dispute about the general rule, that where there is a gift to a class [a fact conceded in the instant case], members of the class take per capita [which is not permitted by the majority opinion herein], unless the contrary intention clearly appears [that no contrary intention appears is another concessum in the case].' " As a matter of fact the Court continued (153 Md. 446) that the rule "has been so generally accepted that the citation of authorities seems almost superfluous. In Maryland,[10] certainly, the decisions have been uniform from at least as far back as *Benson v. Wright,* 4 Md. Ch. 278, down to *Stahl v. Emery,* 147 Md. 123."

I am unable to reconcile these repeated statements of the rule of law in Maryland made and concurred in by so many of the judges, past and present, of this Court with the majority ruling in the present case. The majority, however,

---

members were C. J. Marbury and Judges Delaplaine, Collins, Grason, Melvin, Bailey, Capper and Henderson.

**9.** Here, again, the membership of the Court had undergone a substantial change. It consisted of C. J. Brune and Judges Collins, Hammond, Prescott and Kintner, specially assigned.

**10.** When this opinion and many of the others cited were written, the Massachusetts rule had been adopted there for many years.

base their conclusion upon the fact that (quoting from their opinion) "it would seem that approval of the Restatement rule [Section 303 (1)] has been indicated by this Court, *at least implicitly,* three times * * *." (Italics added.) This is the first appellate decision that has come to my attention that is based upon "implicit indications," when there were previous decisions explicitly to the contrary.

The majority opinion refers to the *Mazziotte* [180 Md. 48] *Patchell, supra,* and *Ballenger* [205 Md. 94] cases. It concedes that a statement made by Judge Bond in *Mazziotte* [which was clearly a reference to the word "issue" when used as a word of limitation, which is plainly shown by reference to the authorities cited by him immediately following the statement] "was not necessary to the decision," and that "the statement in the concurring opinion in *Patchell* [11] * * * that the view of the Restatement [Section 303 (1)] had been adopted as Maryland law in *Mazziotte* may have read more into Judge Bond's language than this Court intended," but holds there was an implicit indication of approval of the Restatement [Section 303 (1)] in the three cases. Instead of reading "more into Judge Bond's language than this Court intended," the statement quoted in footnote 11 simply cannot be justified. There was no question of Section 303 (1) of Restatement involved in *Mazziotte.*

In that case a testator had devised equitable life estates in realty to four daughters, with the provision that upon the death of all the daughters, "then the trust hereby created shall cease and * * * the trust property shall be paid * * * to the issue of my said four daughters living at the termination of the trust per capita." At the termination of the trust, the daughters left surviving them children and grandchildren, and the question arose as to the proper distribution of the trust fund. The Court stated that the word "issue," as used in the will, was clearly one of purchase; that "standing alone, the meaning of it has been a subject of difference of opinion"; but the word did not stand alone, the "takers are to be the issue per

---

11. This statement is [185 Md. 29]: "The rule of Restatement [Section 303 (1)], was, however, adopted by this Court in Mazziotte v. Safe Deposit & Trust Co., supra."

capita, and the qualification seems to dispose of the question of interpretation." The Court continued by pointing out that where the distribution is to be "among issue per capita remoter descendants will share with their parents." In doing so, it referred to several out-of-state authorities and one of them was a part of comment (i) of Restatement, *Property*, Section 303, *viz.*, "when the issue take per capita and not per stirpes, a remoter descendant of B can share even though his parent is alive and shares." This Comment (i) of Restatement is entirely consistent with the Maryland rule that has been repeated so many times. The Court then held, as we should have here, that the grandchildren and great-grandchildren should share equally in the distribution. The case was another illustration of what was said in *Judik v. Travers, supra,* only this time the testator "wanted to make clear that his intention was [not] contrary to the [Maryland] rule on this point."

It should be noted that nowhere in the opinion in *Mazziotte* is any reference made to Restatement, *Property*, Section 303, except the small portion of Comment (i) previously quoted, and we do not find the Restatement cited in support of the position of any of the parties in any of the briefs filed. Moreover, the case was not a proper one for the invocation of said Section 303 (1), as there was present in the will involved "a contrary intent of the conveyor * * * found from additional language or circumstances," the absence of which is an explicit prerequisite to bringing Section 303 (1) into play. In fact, there was a specific holding in the case that the testator in ordering a distribution *per capita* had manifested an intention that his property be divided as the Court ordered, which, of course, was not in accordance with the Maryland law of intestate succession, but was in complete accord with the previous Maryland decisions.

There is no need to discuss in any detail the *Ballenger* and *Robinson* cases cited. In neither of these cases was any question of Section 303 (1) of Restatement involved. In each, there was a specific direction that the property be distributed *per stirpes* and not *per capita*, which, of course, made the section inapplicable.

In concluding, I wish to make it clear that I have not attempted to present the relative merits of the Massachusetts rule as adopted by Restatement in Section 303 (1), and the Maryland rule. There has been a trend toward the Massachusetts rule, and it may well be that it is the better one. If it be desirable for Maryland to reverse its time-honored and oft-repeated rule, I simply, but emphatically, suggest that it should be done by the Legislature and not by the Courts. In this manner, there would be an orderly and prospective integration of the new rule. As it is now, we do not know how many more wills there are in existence that will be affected by this complete change, nor how many beneficiaries there are who would have inherited except for the majority decision herein.

On the Maryland authorities, cited above, I think the distribution should be in thirds—one each to the sons of the deceased life tenant and the other to his grandchild.

Judge Horney has authorized me to say that he concurs in this dissent.